SAX *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAIL-
WAY CO.

1. WRITTEN CONTRACTS—PAROL EVIDENCE.
   Where no fraud or mistake is claimed in making a written con-
   tract, and it contains no ambiguity, parol evidence of the
   conversations and negotiations prior thereto is inadmissible.

2. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—CONSTRUC-
   TION—RAILROAD BRAKEMAN.
   Where plaintiff, who had been injured while in defendant's
   employ as a spare brakeman, entered into a written contract
   with defendant whereby, in consideration of his re-employ-
   ment for such time as his services and conduct should be sat-
   isfactory, he released all claims for damages, the term ''re-
   employment'' means the same service as that in which he
   was formerly employed; and a lay-off because of the discon-
   tinuance of the services of a brakeman on his trains was not
   a breach of the contract.

3. SAME—BREACH—DAMAGES.
   Under a contract for the employment of a brakeman for such
   time as his services and conduct shall be satisfactory, by
   which he is liable to temporary suspension of employment
   without pay, and is under no obligation to remain in such
   employment, a discharge contrary to the terms of the con-
   tract would entitle the employé to nominal damages only.

4. SAME—TRIAL—AUTHORITY OF AGENT—DIRECTING VERDICT.
   Where, in an action against a railroad company for the breach
   of a contract of employment, it conclusively appeared that
   the officer who made the contract had no authority to make
   it, the court should have directed a verdict for defendant.

Error to Shiawassee; Smith, J.   Submitted January 7,
1902.   Decided March 4, 1902.

Case by William J. Sax against the Detroit, Grand
Haven & Milwaukee Railway Company for the breach of
a contract of employment.    From a judgment for plain-
tiff, defendant brings error.    Reversed.

The following contract was executed between the de-
fendant and the plaintiff:

"Chicago & Grand Trunk Railway Company.    Detroit,
Grand Haven & Milwaukee Railway Company.    Toledo,
Saginaw & Muskegon Railway Company.    Cincinnati,
Saginaw & Mackinaw Railway Company.    Grand Trunk
Railway, Michigan Division.

"Whereas, on the 30th day of September, 1895, I,
William Sax, was an employé of the Detroit, Grand
Haven & Milwaukee Railway, and as such employé was
engaged as freight brakeman; and Whereas, I, the said
William Sax, received certain injuries, as follows:    While
coupling G. T. car No. 2,579 and M. D. T. 4,434, at
Holly, had my left hand badly crushed between drawbars
of above cars; and Whereas, the said company denies
any negligence on the part of itself, its officers, agents,
and employés, and denies any legal liability for the
injuries so as aforesaid by me received, but is nevertheless
willing to compromise and settle the claim on the terms
following:

"Therefore, for the purpose of fully ending and deter-
mining the question, and of compromising and settling all
claims on my part, I, the said William Sax, for and in
consideration of the premises, and of my re-employment
by said company for such time as my services and con-
duct shall be satisfactory to the officers of said company
in whose department I may be employed, do hereby
waive and relinquish all claims which I may have against
said company for damages, and do hereby release said
company from all claims for such damages.

"Witness my hand and seal this 17th day of January,
A. D. 1896.
                                    "WILLIAM J. SAX.
    "E. WYKES, F. BROWN, Witnesses."

Plaintiff was permitted to testify to conversations with
certain officers of the defendant in regard to his employ-
ment, had before the above contract was executed.    He
was put to work as brakeman on passenger trains known

as Nos. 41 and 42.   He testified that, after working three
or four months, he was "laid off."   Defendant admitted
on the trial that plaintiff was laid off, for the reason that
the services of the brakeman on those trains were dis-
pensed with.   The only evidence that he afterwards sought
employment with defendant is his own testimony that:

"On Saturday before July 4th I had a conversation
with Mr. Cooper, the train-master.   He says, ' Monday is
the 4th; I will write you Tuesday.'   I have been wait-
ing ever since for that letter."

Testimony was introduced showing his age, and wages
he received as brakeman.

The court instructed the jury that the claim of the
plaintiff was that defendant agreed to "give him re-em-
ployment so long as his services and conduct were satis-
factory.   *   *   *

"If you find that the defendant entered into a contract
with the plaintiff to give him employment as passenger
brakeman so long as plaintiff's conduct and services were
satisfactory to the company, and afterwards laid him off
on account of discontinuing the services of a brakeman on
certain trains, and that such laying off amounted to a dis-
charge, then plaintiff is entitled to recover such damages
as he has suffered, and as he will suffer in the future,
from the breach of the contract;   *   *   *   and in estimat-
ing such damages you may consider what he was earning
and what he was likely to earn while he was actually em-
ployed and likely to be employed under the contract."

The jury rendered a verdict for plaintiff for $2,613.75.

*E: W. Meddaugh* (*Geer & Williams*, of counsel ), for
appellant.

*Watson & Chapman*, for appellee.

Grant, J. (*after stating the facts*).   1. No fraud or
mistake is claimed in making the contract.   Its terms are
explicit.   It contains no ambiguity.   Parol evidence of
the conversations and negotiations prior thereto was there-
fore inadmissible, and should have been excluded.

2. The term "re-employment," used in the contract, means the same service in which he had formerly been employed, namely, that of a "spare brakeman,"—liable to be laid off when no brakeman was needed, and to be re-employed when one was. *Phares* v. *Railway Co.*, 20 Ind. App. 54 (50 N. E. 306). The fact that he had been employed regularly for three or four months, either on passenger or freight trains, did not constitute him a regular brakeman. His services were discontinued because they were not needed. Such discontinuance is expressly provided for in the contract. If, therefore, he was permanently discharged, it was by the act of the trainmaster in not writing a letter as he promised to. It is, however, unnecessary to determine this question.

3. The first judgment in this case was reversed because we held that the contract was not one for life, and that the trial court therefore erred in admitting the mortality tables. 125 Mich. 252 (84 N. W. 314). The other questions now presented were not then determined. The main question now is, Is this contract one for the violation of which future damages can be recovered? What basis is there for the determination of such damages? If there be no basis, the judgment cannot stand. Upon the first trial the case was submitted to the jury upon the theory of a life contract. The mortality tables then furnished some basis for the determination of the damages, which the jury fixed at $1,950. Upon the second trial, with this basis eliminated, and the jury instructed that it was not a life contract, they have increased the former verdict by nearly $700, and found the damages even to the odd cents. Plaintiff did not bind himself to remain in the employ of the defendant for a day. He could leave at any time without violating his contract. Defendant could discharge him at any time by saying to him, "Your services and conduct are not satisfactory." His employment was not to be continuous, but was liable to interruption if a brakeman was not needed. During the time of the interruption he was not entitled to pay. In order to reach a verdict,

it was necessary for the jury to fix the time when the contract would be terminated. That being fixed, and his age and monthly wage being found, the present value of his services could be determined. The jury must then determine the time of the interruption, and the difference between the two amounts would be the amount of the judgment. Upon no other theory can the verdict be sustained. But the record contains no evidence upon these points, and, in the very nature of things, none could be produced. There is no foundation for even a guess by a jury upon either question of fact, because either could terminate the contract at will, and it was equally impossible to tell how much of the time he would be employed. The jury were turned loose into a field of pure speculation and conjecture, without any practical or tangible basis upon which to assess damages. Under such circumstances, none can be assessed. *Pulliam* v. *Schimpf*, 109 Ala. 179 (19 South. 428); *Bolles* v. *Sachs*, 37 Minn. 315 (33 N. W. 862); *East Line, etc., R. Co.* v. *Scott*, 72 Tex. 70 (10 S. W. 99, 13 Am. St. Rep. 758, 38 Am. & Eng. R. Cas. 21); *Louisville, etc., R. Co.* v. *Offutt*, 99 Ky. 427 (36 S. W. 181, 59 Am. St. Rep. 467). No such question was presented in *Brighton* v. *Railway Co.*, 103 Mich. 420 (61 N. W. 550), where the contract was for life. If the plaintiff was discharged by defendant in violation of the agreement, he could recover, at most, only nominal damages. If he was not discharged, but only laid off because his services were not needed, he could not recover. In either event his action must fail.

It is urged that this point was determined by the former opinion, and therefore is *res adjudicata.* Whatever may be our views on this question, we find it unnecessary to determine it. The former case was submitted to the jury upon the theory of a parol life contract. It now conclusively appears by this record that the officer of the defendant with whom plaintiff claims his contract was made had no authority to make it, and the court should have so instructed the jury, and directed a verdict for the defendant.

Reversed and new trial ordered.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.