Per Curiam.
 

 Kerr Manufacturing Company (hereafter defendant) appeals by right the jury verdict finding that while defendant did not wrongfully discharge plaintiff Shirley Franzel or commit sexual discrimination against her, defendant did breach the parties’ contract that formed the basis for plaintiff’s return to work in January 1987. Plaintiff cross appeals to determine whether the trial court erred in summarily dismissing plaintiff’s claims under the Civil Rights Act (cra) of intentional gender discrimination, MCL 37.2202(1); MSA 3.548(202)(1), hostile work environment sexual harassment, MCL 37.2103(1); MSA 3.548(103)(i), retaliation for attempting to oppose a violation of the CRA, MCL 37.2701; MSA 3.548(701),
 
 *603
 
 gender discrimination by defendant Rebecca Leinen, Kerr’s vice president of human resources, and her claim of intentional infliction of emotional distress. Plaintiff also cross appeals from the trial court’s refusal to enter an order of judgment including costs, attorney fees, or mediation sanctions. We vacate the judgment in favor of plaintiff and affirm regarding the cross appeal.
 

 FACTS
 

 Plaintiff worked as a sales representative, district manager, and metro market manager for defendant, a dental products manufacturer, from 1981 through July 1986, and again from January 1987 through May 1987. Plaintiff aspired to the position of regional manager, but allegedly defendant and a host of its employees were committed to preventing a woman from reaching upper management. Plaintiff claims that defendant began discriminating and conspiring against her after three January 1986 incidents at a national sales meeting in Marco Island, Florida, where two comments were made during a slide show that insinuated plaintiff had slept her way to her current position, and where another manager, who was vying for the same regional manager promotion, pinched her on the buttocks. Rick Amos, plaintiff’s supervising regional manager, terminated her employment in July 1986 for failing to satisfy the requirements of a February 1986 “performance improvement plan” (pip), also known as probation.
 

 In August 1986, plaintiff filed her complaint in state court against defendant Kerr, asserting claims of sexual harassment and sexual discrimination in violation of the CRA, breach of contract, wrongful discharge,
 
 *604
 
 negligent evaluation, and retaliatory treatment for filing the lawsuit, but the action was removed to the United States District Court for the Eastern District of Michigan on diversity grounds. After a lengthy trial before Judge Barbara K. Hackett, the federal court jury found that plaintiffs employment could be terminated for just cause only, but issued a verdict of no cause of action. The federal case was subsequently dismissed, however, when plaintiff filed a posttrial challenge to diversity jurisdiction and defendant did not oppose it. Thus, the parties refiled their pleadings in the Wayne Circuit Court and the instant lawsuit proceeded. Rebecca Leinen was also added as a defendant in the state court action.
 

 While her federal lawsuit was pending, however, defendant made plaintiff an unconditional offer to return to work. After negotiations, plaintiff agreed and signed a December 11, 1986, letter setting forth the conditions of her reinstatement, including the geographical territories she would service (which did not include the same successful Michigan accounts she had in the past), that Amos would no longer oversee her work, and that she was subject to annual reviews like all other district managers. From the outset, the problems that had plagued plaintiff before her first termination involving extremely late paperwork and expense reports began to reoccur, and plaintiff was again placed on a pip.
 

 When plaintiff refused a direct order to (1) retrieve from home some “documentation” that she claimed existed to rebut the allegations in her pip (and support many of the allegations she made against other employees who allegedly sexually harassed her and conspired against her), and (2) return to work with
 
 *605
 
 the documentation on the same day, she was suspended. Plaintiff then informed defendant that she could not return to work for medical reasons at the direction of her psychologist, but she refused to submit to an independent medical or psychological examination that defendant requested. Defendant once again terminated her employment, this time for insubordination.
 

 In the state court action, the trial court granted defendant Rebecca Leinen’s motion for summary disposition and dismissed plaintiffs claims of sexual harassment, hostile work environment sex discrimination, retaliation, and intentional Infliction of emotional distress.
 
 [1]
 
 The jury was instructed with regard to the claims of (1) wrongful discharge, (2) sex discrimination in violation of the CRA, and (3) breach of contract for defendant’s alleged violation of the unconditional offer to return to work.
 

 The jury found no wrongful discharge (specifically finding that plaintiff was not an employee whose employment could be terminated for just cause only) and no sex discrimination, but it did find that defendant breached the contract between the parties that formed the basis for plaintiff’s return to work in January 1987. The jury awarded plaintiff $425,000 in damages but reduced that amount by $200,000 for failure to mitigate. Defendant appealed, and plaintiff cross appealed to this Court.
 

 
 *606
 
 i
 

 A
 

 First, defendant Kerr asserts that the trial court committed error requiring reversal in refusing to reduce the jury’s damage award to a nominal amount Defendant argues that the jury’s damage award was purely speculative and that plaintiff was entitled to only nominal damages under
 
 Sepanske v Bendix Corp,
 
 147 Mich App 819; 384 NW2d 54 (1985), and
 
 Environair, Inc v Steelcase, Inc,
 
 190 Mich App 289, 293; 475 NW2d 366 (1991). These cases support the proposition that even if defendant breached its contract with plaintiff regarding her return to work, nothing in the contract ensured her continued employment because, as the jury found, she was an at-will employee, not an employee whose employment could be terminated for just cause only. Notably, neither mental distress damages nor exemplary damages are available in an action for breach of contract, even if the breach is malicious or wilful.
 
 Walker v Consumers Power Co,
 
 824 F2d 499, 504-505 (CA 6, 1987);
 
 Valentine v General American Credit, Inc,
 
 420 Mich 256, 259-263; 362 NW2d 628 (1984). We find that plaintiff was entitled to only nominal damages for breach of the at-will employment contract and the trial court erred in denying defendant’s motion for remittitur.
 

 In
 
 Sepanske, supra
 
 at 828-829, this Court affirmed the proposition that the breach of an at-will employment contract entitles the employee to receive only nominal damages because, regardless of the contract terms, the employee had no reasonable expectation of continued employment. In that case, plaintiff Sepanske returned to work after taking a company-approved social service leave of absence but was
 
 *607
 
 placed in a different job in a different department, contrary to company policy guaranteeing reinstatement to a former position or one of equal or greater responsibility. The defendant’s personnel manager had also given Sepanske a letter stating that Sepanske was “ ‘scheduled to return to [his] former position’ ” upon completion of his social service leave.
 
 Id.
 
 at 823. The jury found that Sepanske’s responsibilities regarding his new job were neither greater than nor equal to those regarding his former job, and awarded him $75,206 in damages for future lost earnings.
 
 Id.
 
 at 824-825.
 

 This Court vacated the jury’s damage award and remanded to the district court for entry of a judgment in Sepanske’s favor “for nominal damages only.”
 
 Id.
 
 at 829. The Court stated:
 

 We take an entirely different approach [than the parties] on the issue of damages. We think that plaintiff was entitled to nominal damages only for defendant’s breach of the employment contract.
 
 This is not a case of wrongful discharge. Plaintiff’s expectation under the contract was to be restored to his old job or to an at-will position which was equivalent to or better than his position in pension and payroll, but he had no actionable expectation that any such restoration would be permanent. The position was still at will—one which the employer was free to alter or terminate without consequence.
 
 The fact that defendant historically had not arbitrarily reclassified positions or terminated employees does not change its right to do so. . . .
 
 The jury’s damage assessment in such a situation amounts to pure speculation. There is no tangible basis upon which damages may be assessed where plaintiff’s eccpectation was for an at-will position which could have been changed or from which he could have been terminated without consequence.
 
 See
 
 Sax v Detroit, G H & M R Co,
 
 129 Mich 502, 506; 89 NW 368 (1902).
 
 [Id.
 
 (emphasis added).]
 

 
 *608
 
 This Court recently reiterated that
 
 Sepanske
 
 should not be extended beyond breach of contract actions where at-will employees are entitled to only nominal damages.
 
 Hord v Environmental Research Institute of Michigan,
 
 228 Mich App 638, 643-644; 579 NW2d 133 (1998).
 

 In
 
 Environair, supra
 
 at 293-294, we stated that while
 
 Sepanske
 
 involved an employment relationship, its holding regarding the speculative nature of damages was equally applicable to nonemployment, at-will contractual relationships (e.g., exclusive sales contracts).
 

 Our Supreme Court has not affirmatively endorsed
 
 Sepanske,
 
 but the Court has discussed its holding, if only to distinguish it from a case being considered. In
 
 Phillips v Butterball Farms Co, Inc (After Second Remand),
 
 448 Mich 239, 251, n 31, 253; 531 NW2d 144 (1995), the Supreme Court found
 
 Sepanske
 
 inapplicable where the plaintiff sued her employer
 
 in tort
 
 for worker’s compensation retaliatory discharge. After quoting pertinent parts of the
 
 Sepanske
 
 opinion as set forth above, the Supreme Court merely stated that “[t]he claim in
 
 Sepanske,
 
 however, was premised on breach of contract, not a separate tort.”
 
 Id.
 
 at 253. Accord
 
 Sax, supra
 
 at 506;
 
 Mallory v Jack,
 
 281 Mich 156; 274 NW 746 (1937) (future damages may not be awarded under employment contracts terminable at will). Notably, the
 
 Sax
 
 Court stated:
 

 There is no foundation for even a guess by a jury upon either question of fact [regarding when the employment contract would end and when it in fact ended], because either could terminate the contract at will, and it was equally impossible to tell how much of the time [the plaintiff, a train brakeman who was injured and subsequently
 
 *609
 
 rehired,] would be employed.
 
 The jury were
 
 [sic]
 
 turned, loose into afield of pure speculation and conjecture, without any practical or tangible basis upon which to assess damages. Under such circumstances, none can be assessed. [Sax, supra
 
 at 506 (emphasis added).]
 

 Plaintiff offers no case law support contrary to
 
 Sepanske;
 
 rather, she merely emphasizes Judge Shepherd’s position in his dissenting opinion in
 
 Sepanske
 
 that because the defendant could have fired the plaintiff at any time, it did not mean that the defendant was likely to fire him.
 
 Sepanske, supra
 
 at 832. In his dissent, Judge Shepherd also argued that public policy and fairness favor placing the burden of proof on the defendant to show that
 
 in fact
 
 the plaintiff
 
 would have been discharged,
 
 particularly given that the plaintiff in
 
 Sepanske
 
 was providing a public service on the defendant’s behalf while on leave before the employment relationship ended.
 
 Id.
 
 at 833. We find these arguments unpersuasive.
 

 B
 

 Plaintiff also argues that the reinstatement “contract” between plaintiff and defendant dated December 11, 1986, constituted an employment contract that was terminable for just cause only. Plaintiff asserts that the jury’s special verdict form evidences that the jury found plaintiff to be an at-will employee during her first term of employment but not during her reinstatement. A quick review of the jury’s special verdict form disproves this argument.
 

 The following are the questions and the jury’s responses to the special verdict form:
 

 Count i: Do you find that Plaintiff has proven by a preponderance of the evidence that
 
 the employment relation
 
 
 *610
 

 ship between the Plaintiff and Defendant
 
 was such that Plaintiff would not be discharged except for just cause? NO
 

 Count n: Do you find that Plaintiff has proved by a preponderance of the evidence that one of the reasons she was discharged was because of her sex? no
 

 Count III: Question 1: Do you find that Plaintiff has proved by a preponderance of the evidence that Defendant
 
 breached the contract which Plaintiff and Defendant entered into upon her return to
 
 work? yes
 

 Question 2: Do you find by a preponderance of the evidence that Plaintiff suffered damages as a result of the breach of contract? yes
 

 Damages: Question 1: If plaintiff suffered damages, what is the amount of damages you award to Plaintiff? Count ill, Breach of Contract, $425,000
 

 Question 2: Did Plaintiff make a reasonable effort to minimize her damage? NO
 

 By what amount do you find the award of damages will be reduced? $200,000 [Emphasis added.]
 

 Cleaxly, nothing in the language of the special vexdict foxm xegaxding count I limited the question of at-will ox just-cause employment to eithex plaintiffs first ox second period of employment.
 

 c
 

 Plaintiff further argues that the language of the reinstatement contract itself establishes the just-cause nature of the employment relationship. A review of the pertinent language in the reinstatement contract that plaintiff signed supports a contrary view:
 

 1. Kerr will unconditionally reinstate you to the position of District Manager within the Michigan market effective January 5, 1987.
 

 2. You will be reinstated at your former salary of $35,000.00 per year.
 

 
 *611
 
 3. You will be entitled to the normal bonus arrangement available to District Managers.
 

 4. You will be provided with all fringe benefits available to District Managers.
 

 5.
 
 You will be subject to annual reviews the same as is provided to all other District Managers.
 

 6.
 
 For a period of six (6) months, you will be assigned the following accounts:
 

 A. University of Michigan
 

 B. Healthco
 

 C. Either Patterson or Bignall
 

 While these accounts will be assigned to you for a minimum of six months, we advise you that they may be subject to some change should unusual circumstances arise which cannot be anticipated at this point. It is our intention, however, that these accounts remain with you absent unusual circumstances for the six month period.
 

 7. Upon reinstatement, there will be no loss of service time.
 

 8.
 
 The Regional Manager, Rick Amos, will be removed from the review process and will not make any recommendations either for promotion or demotion for a period of one (1) year ending December 31, 1987.
 
 Mr. Amos will retain all other responsibilities for supervision of your employment as is provided to other District Managers.
 

 9. Your reemployment is conditioned upon successful passing of the normal physical examination required of all employees returning to work. [Emphasis added to indicate where plaintiff claims defendant violated the agreement.]
 

 Nothing in the reinstatement contract mentions just-cause or at-will employment, but plaintiff argues that both paragraphs 5 and 6 provide definite periods during which plaintiff was ensured reemployment. We disagree.
 

 First, plaintiff argues that defendant breached the agreement by placing her on her second pip on April 23, 1987. She interprets paragraph 5 as ensuring that
 
 *612
 
 she would only be reviewed
 
 after
 
 one year of service. Testimony at trial established that employees could be placed on a pip at any time independent of annual reviews, contrary to plaintiffs contention that an annual review went hand in hand with and always preceded a pip.
 

 Second, plaintiff argues that because plaintiff was not assigned for a minimum of six months the territories promised in paragraph 6 (i.e., defendant assigned her other Cleveland doctors and hospitals), defendant again breached the contract. Plaintiff asserts that regardless of whether the evidence shows that a breach occurred,
 
 [2]
 
 she was guaranteed at most one year (and, implicitly, at least six months) of employment, which is employment for a definite duration. She asserts that, therefore, the reinstatement agreement constitutes a just-cause employment agreement. Counsel for plaintiff admitted to the trial court, however, that the reinstatement contract contained the
 
 implication
 
 of just-cause employment, which admission is lethal to plaintiff’s claim. It is black letter law in Michigan that when an employment agreement is silent regarding the type of employment relationship, at-will employment, not just-cause employment, is presumed.
 
 Rowe v Montgomery Ward & Co, Inc,
 
 437 Mich 627, 631-632, 635-638; 473 NW2d 268 (1991) (Riley, J., joined by Brickley and Griffin, JJ.).
 

 This Court believes that a commonsense reading of the contract supports neither plaintiff’s claim of a just-cause employment agreement nor a promise of employment for either six months or a year. Rather, upon her reemployment, plaintiff was again an at-will
 
 *613
 
 employee. This conclusion is supported by the fact that in a letter to plaintiff dated July 29, 1986 (just after plaintiff’s first termination from employment), Rebecca Leinen, defendant’s vice president of human resources, expressly informed plaintiff that “[a]s you know, as a salaried employee at Kerr, the terms of your employment were on an
 
 ‘employment at will’
 
 basis and could be terminated at any time by either party for any reason” (emphasis added). Thus, plaintiff was on notice at the time she signed the reinstatement contract that her employment was at will.
 

 Moreover, she was reinstated during the pendency of her federal lawsuit and had access to counsel in determining whether to sign the contract without adding just-cause language. Further, because a breach of an employment contract does not give rise to a tort claim where the breach of duty is not independent of the contract breach, plaintiff cannot recover tort damages.
 
 Hetes v Schefman & Miller Law Office,
 
 152 Mich App 117, 121-122; 393 NW2d 577 (1986), citing
 
 Kewin v Massachusetts Mut Life Ins Co,
 
 409 Mich 401; 295 NW2d 50 (1980).
 

 In summary, the trial court erred in ignoring
 
 Sepanske.
 
 Therefore, we reverse the trial court’s order denying defendant’s motion for remittitur.
 

 n
 

 Defendant next argues that the trial court abused its discretion in admitting, over defendant’s objections, a letter subject to the attorney-client privilege written by Donald Van Suilichem, defendant’s then-counsel, to Rebecca Leinen, defendant’s vice president of human resources. Defendant further argues that although the trial court relied on the correct con
 
 *614
 
 trolling case,
 
 Sterling v Keidan,
 
 162 Mich App 88; 412 NW2d 255 (1987), the court incorrectly applied a standard that this Court in
 
 Sterling
 
 refused to follow. Defendant argues that because of the somewhat inflammatory nature of the letter and plaintiffs repeated reference to the letter during plaintiffs opening statement, closing statement, and case in chief, the admission of the privileged letter constitutes an error requiring reversal. We agree.
 

 We review for an abuse of discretion the admission of evidence and the determination whether a document is privileged.
 
 Co-Jo, Inc v Strand,
 
 226 Mich App 108, 113; 572 NW2d 251 (1997);
 
 People v McAlister,
 
 203 Mich App 495, 505; 513 NW2d 431 (1994).
 

 Plaintiff allegedly found the letter in her personnel file that attorney Van Suilichem forwarded to plaintiffs counsel during the pendency of the federal action. A determination whether defendant carelessly gave plaintiff the letter or intended for plaintiff to see the letter while planning to argue that it was nevertheless privileged is essential to resolving this issue.
 

 Several factors point toward a conclusion that plaintiff obtained the letter from a source other than attorney Van Suilichem.
 
 [3]
 
 First, every document in plaintiffs personnel file was “Bates stamped” with a five-digit number before attorney Van Suilichem released the files to plaintiffs attorney. A November 19, 1986, letter apparently accompanying “employ-
 
 *615
 
 merit records” from Van Suilichem to plaintiffs then-counsel, Alan Waterstone, set forth the beginning and ending sequence of numbers for all documents in the file. Although the record is unclear, it appears that after defendant learned that plaintiff had the December 19, 1986, letter, defendant requested that plaintiff produce the Bates-stamped copy of the letter, but plaintiff was unable to do so. Also, more Bates-stamped records were apparently forwarded to plaintiffs counsel after November 1986 and throughout this extended litigation.
 

 Accordingly, even if the letter were inadvertently inserted into plaintiffs personnel file, the letter should have been Bates stamped like all the other documents contained in her fairly voluminous file. The chance that a document this damaging would appear in plaintiffs file
 
 after
 
 the entire file had been catalogued and stamped is, in this Court’s estimation, slim to none.
 

 Also, in light of the testimony plaintiff presented at trial regarding the “other file” that defendant maintained with respect to plaintiff, defendant apparently had no reason to place or keep a letter from its own attorney in plaintiff’s general personnel file. We therefore find it highly improbable that plaintiff obtained the letter in the manner she suggests. Notably, in denying defendant’s motion in limine to exclude the letter, the trial court was also uncertain: “I will tell you that if they established it didn’t come from the personnel file, it may have been a different story.”
 

 With that factual background, we turn to
 
 Sterling, supra,
 
 a rather confusing case to read but one that ultimately stands for the following propositions: (1) The attorney-client privilege has a dual nature, i.e., it
 
 *616
 
 includes both the security against publication and the right to control the introduction into evidence of such information or knowledge communicated to or possessed by the attorney,
 
 Sterling, supra
 
 at 93; (2) This dual nature of the privilege applies where there has been inadvertent disclosure of privileged material,
 
 id.
 
 at 94; (3) An implied waiver of the privilege must be judged by standards as stringent as for a “true waiver,” before the right to control the introduction of privileged matter into evidence will be destroyed, even though the inadvertent disclosure has eliminated any security against publication,
 
 id.
 
 at 95-96; (4) A “true waiver” requires “ ‘an intentional, voluntary act and cannot arise by implication,’ ” or “ ‘the voluntary relinquishment of a known right,’ ”
 
 id.
 
 at 91 (citation omitted); and (5) Error of judgment where the person knows that privileged information is being released but concludes that the privilege will nevertheless survive will destroy any privilege,
 
 id.
 
 at 98.
 

 In
 
 Sterling,
 
 this Court held that the trial court correctly found no waiver of the attorney-client privilege where an attorney inadvertently included in the client’s file a letter from the attorney’s malpractice lawyer regarding a potential cause of action that the client might raise against the attorney.
 
 Id.
 
 at 98-99. The client’s subsequent counsel discovered the letter and attempted to use it in the malpractice suit to discover further correspondence between the two attorneys. The trial court, however, granted the first attorney a protective order, concluding that waiver of the privilege could not arise “ ‘by accident.’ ”
 
 Id.
 
 at 90-91. Accord
 
 Co-Jo, Inc, supra
 
 at 113-114.
 

 The
 
 Sterling
 
 Court rejected the analysis in
 
 United States v Kelsey-Hayes Wheel Co,
 
 15 FRD 461, 465 (ED
 
 *617
 
 Mich, 1954), which held that the risk of inadvertent disclosure as a result of insufficient precautions rests with the party claiming the privilege, and confidential documents indiscriminately intermingled with routine corporate documents were deemed admissible. In the case at bar, unlike Kelsey-Hayes, Jerome Richardson, an attorney formerly employed in defendant’s human relations/personnel department, testified that defendant kept a separate file on plaintiff, apparently making “ ‘special effort to preserve [privileged and other documents] in segregated files ....’”
 
 Sterling, supra
 
 at 97, quoting
 
 Kelsey-Hayes, supra
 
 at 465.
 

 We disagree with plaintiff’s position that the disclosure here was identical to that in
 
 Kelsey-Hayes.
 
 Although the file that Van Suilichem forwarded to plaintiff’s then-counsel, Allen Counard, contained some privileged documents and Van Suilichem’s May 25, 1995, letter to Counard asserted an attorney-client privilege regarding those documents, Van Suilichem never referenced the December 19, 1986, letter as privileged despite defendant’s production of it. We therefore believe the evidence establishes that the letter at issue was not intentionally presented to plaintiff. Again, all the allegedly privileged documents referred to in the May 1995 correspondence and turned over to plaintiff were Bates stamped except the December 19 letter.
 

 Thus, we conclude that an unprejudiced person reviewing the evidence would find no justification or excuse for the trial court’s decision to deny defendant’s motion in limine or motion for a protective order to preclude plaintiff from submitting Van Suilichem’s December 19, 1986, letter to the jury. See
 
 Cleary v Turning Point,
 
 203 Mich App 208, 210; 512
 
 *618
 
 NW2d 9 (1994). There is no evidence to support the conclusion that defendant committed a “true waiver,” as
 
 Sterling
 
 requires, if in fact it inadvertently forwarded the document to plaintiff.
 

 Given the tenor of the letter and the statements it contains,
 
 [4]
 
 the prejudice to defendant in having the letter read to the jury is obvious.
 
 [5]
 
 It is well recognized that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, i.e., where a tendency exists that the evidence will be given undue or preemptive weight by the jury.
 
 In re Flury Estate,
 
 218 Mich App 211, 217-218; 554 NW2d 39 (1996), mod 456 Mich 869 (1997). Here, the letter was improperly admitted into evidence and its contents created undue prejudice against defendant regarding its intentions in rehiring plaintiff. The fact that the federal jury found no cause of action against defendant without the December 19 letter further strengthens defendant’s assertion that the jury here was prejudiced by the letter. We therefore find that the admission of the December 19, 1986, letter constituted error requiring reversal of the judgment entered on the jury verdict regarding the breach of contract claim.
 

 We are mindful, however, that on retrial plaintiff may not relitigate her at-will status, pursuant to our findings in section I. Moreover, if retrial should occur,
 
 *619
 
 the new jury should be instructed that if it finds a breach of the reinstatement contract, plaintiff is entitled to only nominal damages because she was an at-will employee, and only nominal damages are available for breach of an at-will employment contract.
 
 Sepanske, supra
 
 at 829; see also
 
 Valentine, supra
 
 at 259, 263.
 

 Also, even if plaintiff is awarded nominal damages on retrial, i.e., usually one dollar, she will not be able to recover court costs under MCR 2.625(C) because her damage recovery in this contract action is considered “trivial,” and any damage recovery less than $100 will limit the recovery of costs to that same amount. I Stockmeyer, Michigan Law of Damages (2d ed) (ICLE, 1989), § 1.6, pp 1-4 to 1-6.
 

 m
 

 Defendant argues that because it substantially performed on the essentials of the December 11, 1986, agreement, it did not breach the reinstatement contract. In essence, defendant asserts that the breaches must be substantial. In light of our resolution of the issue presented in section n, we believe that this point is moot. Although defendant may argue the defense of substantial compliance to the jury on retrial of the breach of contract issue alone, the jury must decide whether defendant substantially complied with the reinstatement agreement.
 
 P & M Constr Co, Inc v Hammond Ventures, Inc,
 
 3 Mich App 306, 313-315; 142 NW2d 468 (1966). Accordingly, this Court need not resolve this issue on appeal. See
 
 Gibson v Group Ins Co of Michigan,
 
 142 Mich App 271, 275-276; 369 NW2d 484 (1985).
 

 
 *620
 
 rv
 

 Defendant further asserts that the trial court erred in permitting Dr. Kenneth Adams, a psychologist that defendant often used to perform testing of its potential managers, to testify at trial, over defendant’s objections, that (a) plaintiff is a credible witness, (b) defendant’s employment policies and regulations were petty and trivial, (c) defendant should settle the suit because of plaintiff’s strength as a witness, and (d) defendant set plaintiff up to fail, as evidenced by attorney Van Suilichem’s December 19, 1986, letter. All these opinions were contained in Dr. Adams’ second report, dated September 9, 1987, which he formulated at defense counsel's request after reading the deposition testimony of plaintiff and her husband and reviewing plaintiff’s test results, apparently in order to evaluate plaintiff’s readiness for trial. Plaintiff called Dr. Adams as a witness and examined him with respect to this report after the trial court denied defendant’s motion in limine to exclude from evidence this testimony and the report.
 

 Whether a witness is qualified to render an expert opinion and the admissibility of an expert’s testimony are matters within the trial court’s discretion, and we review those decisions for an abuse of discretion.
 
 Lopez v General Motors Corp,
 
 224 Mich App 618, 634; 569 NW2d 861 (1997). Under this standard, an abuse of discretion is found only if “an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling.”
 
 Cleary, supra
 
 at 210, citing
 
 Gore v Rains & Block,
 
 189 Mich App 729, 737; 473 NW2d 813 (1991).
 

 It should be noted that Dr. Adams’ second report came to the attention of plaintiff during the federal
 
 *621
 
 litigation. According to plaintiff, Dr. Adams provided this report to plaintiff because defendant did not. One could surmise that if defendant asked Dr. Adams to evaluate plaintiffs strength as a witness, defendant was planning on using this information to establish trial strategy (particularly because the first report dealt with plaintiffs psychological status and was properly shared with plaintiff).
 

 Expert testimony from a recognized specialist must assist the trier of fact in understanding evidence or in determining an issue of fact. MRE 702. The subject matter of the expert’s testimony should be directly related to and within the immediate scope of the witness’ expertise.
 
 Independence Twp v Skibowski,
 
 136 Mich App 178, 186; 355 NW2d 903 (1984). As a prerequisite to the admission of expert testimony, “there must be knowledge [by the expert] in a particular area that ‘belongs more to an expert than to the common man,’ ” i.e., if the jury is in as good a position as the expert to determine intelligently the issue involved without enlightenment from those with a specialized understanding of the subject, then the expert should not be permitted to express his opinion. Ci
 
 rner v Tru-Valu Credit Union,
 
 171 Mich App 163, 168-169; 429 NW2d 820 (1988) (citation omitted).
 

 Moreover, although facts known and opinions held by experts are not work product, pursuant to MCR 2.302(B)(4),
 

 [t]he arrangement of those facts and opinions in a report, made directly responsive to the inquiries of an attorney, is, however, work product; a disclosure of the report itself would betray those thoughts, mental impressions, formulations of litigation strategy, and legal theories of the attorney that are protected by the work-product [privilege]. To hold
 
 *622
 
 that a party to a litigation could attain copies of those reports by merely making a demand for production without more would have the practical effect of chilling the ability of an attorney and his retained expert witness to freely communicate in writing. See also 2 Martin, Dean & Webster, Michigan Court Rules Practice, pp 173, 177.
 
 [Backiel v Sinai Hosp of Detroit,
 
 163 Mich App 774, 778; 415 NW2d 15 (1987).]
 

 Dr. Adams testified that he prepared the second report because defense counsel asked him to tell them “what you really think” about plaintiff.
 

 We agree that expert testimony regarding the credibility of a witness is improper, because the jury is the sole arbiter of witness credibility.
 
 Johnson v Corbet,
 
 423 Mich 304, 314; 377 NW2d 713 (1985);
 
 People v McFall,
 
 224 Mich App 403, 412; 569 NW2d 828 (1997). Thus, the trial court abused its discretion in permitting Dr. Adams to testify regarding this subject.
 

 With regard to Dr. Adams’ observations concerning defendant’s business practices being petty and trivial, we also agree with defendant. Defendant’s business practices were outside Dr. Adams’ field of expertise: psychology. His report did not state that plaintiff found the policies petty or trivial and that as a result those policies affected plaintiff’s psychological make up in some way. The jury was capable of determining the wisdom of defendant’s business policies, and plaintiff’s having an expert testify regarding his opinion about these policies runs contrary to MRE 702. See also
 
 Cirner, supra.
 
 The same conclusion applies to Dr. Adams’ testimony that he urged defendant to settle because plaintiff would be such a strong witness. Again, Dr. Adams’ expertise is not in the law but in psychology, and his “expert” opinion in an area outside his profession could unduly sway the jury to
 
 *623
 
 accept that opinion rather than reach their own conclusion on the facts.
 
 Cirner, supra
 
 at 169-170.
 

 Because Van Suilichem’s December 19, 1986, letter was subject to the attorney-client privilege and erroneously admitted into evidence, it was also improper for Dr. Adams to discuss his opinion regarding the statements made in the letter and defendant’s approach to reinstating plaintiff.
 

 Accordingly, the trial court abused its discretion in permitting Dr. Adams to testify regarding his September 9, 1987, report to defense counsel because the report was protected work product and because other portions of his testimony addressed issues that the common man was capable of determining without the assistance of an expert. Thus, admission of his testimony constituted an improper attempt to persuade the jury to accept his opinion rather than reach its own conclusions based on the evidence presented at trial.
 
 Cirner, supra.
 

 v
 

 On cross appeal, plaintiff also argues that the trial court erred in summarily dismissing pursuant to MCR 2.116(C)(8) and (10) plaintiff’s claims under the CRA of intentional gender discrimination, MCL 37.2202(1); MSA 3.548(202)(1), hostile work environment sexual harassment, MCL 37.2103(i); MSA 3.548(103)(i), retaliation for attempting to oppose a violation of the CRA, MCL 37.2701; MSA 3.548(701), gender discrimination by defendant Rebecca Leinen, and her claim of intentional infliction of emotional distress. Upon review de novo, we find that the court did not err in finding either no genuine issue of material fact regarding the claims of intentional gender discrimination, sexual
 
 *624
 
 harassment, retaliation for opposing a violation of the CRA or the failure to state a claim regarding sexual harassment, gender discrimination by Rebecca Leinen, or intentional infliction of emotional distress. Plaintiffs remaining issue on cross appeal is moot, so we need not address it.
 

 Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 It is difficult to reiterate all of plaintiffs allegations because her August 1994 complaint contains 175 paragraphs of factual assertions and arguments but no distinct “counts,” and it does not set forth prima facie elements for any of plaintiffs claims.
 

 [2]
 

 This issue is discussed at length in section n of this opinion.
 

 [3]
 

 Defendant speculates that Jerome Richardson, an attorney formerly employed in defendant’s human relations/personnel department whose employment was terminated shortly after plaintiff’s and who testified not only that plaintiff was an employee whose employment could be terminated for just cause only but also that the company kept a secret file on plaintiff, may have provided the document to her, but there is no direct evidence in the record to support this proposition.
 

 [4]
 

 The December 19, 1986, letter included statements such as “we discussed yesterday the possible ways to minimize the damage by
 
 making it look like we’re being fair
 
 in the distribution of the accounts and in our actions towards Ms. Franzel
 
 to make it look like we really want her back to work . . .
 
 (Emphasis added.)
 

 [5]
 

 We also note that this letter was
 
 not
 
 introduced into evidence during the federal trial in which the jury found no cause of action.