# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA MERCHAND,

        Plaintiff-Appellant/Cross-Appellee,

v

RICHARD L. CARPENTER, M.D.,

        Defendant-Appellee/Cross-
        Appellant

and

MID-MICHIGAN EAR, NOSE, AND THROAT,
P.C.,

        Defendant.

UNPUBLISHED
August 2, 2016

No. 327272
Ingham Circuit Court
LC No. 12-001343-NH

Before: OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff appeals as of right from a judgment of no cause of action in favor of defendant following a jury trial. For the reasons stated below, we reverse and remand for a new trial.

## I. FACTS

The underlying case arises from a medical malpractice action filed by plaintiff against defendant for a permanent injury to plaintiff's right hypoglossal nerve (HGN),[1] allegedly suffered during defendant's routine removal of plaintiff's right submandibular gland in August 2010.[2] Plaintiff suffered from sialadenitis, a salivary gland infection. Defendant, a board-

---

[1] The HGN is the 12th cranial nerve and controls movement of the tongue. There is a right and a left HGN, which provide motor activity to the right and left sides of the tongue.

[2] MMENT was dismissed from the lawsuit with prejudice by stipulation of the parties prior to trial.

certified otolaryngologist (an ear, nose, and throat doctor), used a harmonic scalpel, a surgical instrument that uses ultrasonic vibrations to simultaneously cut and cauterize tissue, to remove a stone from plaintiff's right salivary gland and a portion of the gland. According to defendant's records, the surgery lasted 23 minutes, there were no complications, and plaintiff's anatomy presented no anomalies. The pathology report on the excised portion of gland notes that the gland was inflamed, but was without infection.

Immediately after the anesthesia from the surgery wore off, plaintiff noticed that her tongue felt thick, that she was biting it all the time, and that a lot of saliva was coming from the right side of her mouth. She testified at trial that, prior to the surgery, she had experienced no problems with her tongue, with biting her tongue, or with saliva or spit coming from her mouth. Plaintiff and members of her family testified that, in the days and months following the surgery, plaintiff experienced tongue biting, difficulty swallowing and chewing, impaired speech, and spitting when talking. Plaintiff's daughter testified that plaintiff talked through "gritted teeth" in an effort not to bite her tongue, and would frequently exclaim "ow," and grab the side of her face.

Plaintiff testified at trial that she repeatedly told defendant about her tongue-biting and drooling symptoms at several follow-up visits over the next nine months, but defendant did not record her complaints in her medical record. Defendant's record of plaintiff's treatment charts some swelling and drainage, notes that defendant drained and cauterized plaintiff's incision and prescribed antibiotics, and states that plaintiff's incision is "healing nicely" and "doing well." Defendant testified that it was possible, but unlikely, that plaintiff informed him of post-operative complications. Plaintiff's last appointment with defendant was in March 2011.

In April 2012, plaintiff noticed that her tongue was deviating and that there were deep impressions in it. She contacted her primary care physician, who, after reviewing plaintiff's medical record and the results of an MRI, confirmed denervation of the right side of plaintiff's tongue. The physician referred plaintiff to an expert in neurology, who concluded that plaintiff's symptoms were consistent with an injury to plaintiff's HGN in August 2010.

At trial, Dr. Michael Morris, plaintiff's standard of care expert witness, explained that, in order to remove the submandibular gland, the surgeon makes an incision approximately four centimeters below the patient's jawbone, cutting through the skin, subcutaneous tissue, and muscle until reaching the connective tissue and obtaining a visual of the submandibular gland. As the surgeon elevates the submandibular gland, the muscles under the gland become visible. In those muscles are the HGN and the lingual nerve, nerves that supply the tongue with sensation and activity. Dr. Morris said that, when removing the submandibular gland, a surgeon has to identify those nerves to ensure preserving them. He opined that defendant breached the standard of care by failing to identify the HGN and by using the harmonic scalpel to separate the gland from the tissue in a way that brought the vibrating scalpel too close to the HGN.

Dr. Steven Schechter, a board-certified neurologist and clinical neurophysiologist testified to a reasonable degree of medical certainty that, based on the absence of symptoms prior to surgery, and the progression of symptoms following the surgery, plaintiff's nerve injury resulted from something that occurred during surgery. He explained that an injury to the HGN during surgery would not result in immediate, total paralysis of the tongue, and that deficits in

motor function would take months and years to develop. Dr. Schechter testified that the worsening of plaintiff's symptoms over time as reflected in the medical records was typical of an injury to the right HGN that occurred at the time of surgery.

Drs. Eugene Rontal and Henry Borovik, both board-certified ontolaryngologists, testified as expert witnesses on defendant's behalf. Both concluded that defendant did not injure plaintiff's HGN, reasoning that an injury to plaintiff's HGN during the August 2010 surgery would have produced immediate effects. Dr. Rontal said that the tongue deviation would have happened immediately and been obvious, and the tongue fasciculation, i.e., muscle twitching, that plaintiff currently experiences would have developed within three to four months of the injury. In like fashion, Dr. Borovik testified that, if defendant had injured plaintiff's HGN, there would have been an immediate loss of motor function.

After just over four hours of deliberation, the jury found defendant not professionally negligent by a vote of 6 to 2. After further proceedings not relevant to the instant appeal, the trial court entered a judgment of no cause of action in favor of defendant on April 21, 2015. Plaintiff appeals from the judgment, and defendant raises two issues on cross appeal.

## II. ISSUES ON APPEAL

On appeal, plaintiff raises a number of issues related to certain pretrial and trial rulings by the trial court prohibiting plaintiff's introduction of evidence from defendant's past medical malpractice cases, his 2012 termination from MMENT, and his 2013 arrest and prosecution in Florida for obtaining controlled substances without a valid prescription.

First, plaintiff contends that, because defendant presented himself as an expert, the trial court should have allowed her to cross-examine him under MRE 608(b) regarding past poor performances in order to attack his credibility. We disagree. We review the trial court's ruling regarding the admission of evidence for an abuse of discretion, *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). The abuse of discretion standard recognizes "that there will be circumstances in which...there will be more than one reasonable and principled outcome." *People v. Babcock,* 469 Mich 247, 269; 666 NW2d 231 (2003). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Services v Anderson*, 304 Mich App 750, 754; NW2d 408 (2014).

MRE 608(b) authorizes, for the purpose of attacking or supporting the witness's credibility, inquiry into specific instances of conduct under the following conditions:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

However, it is axiomatic that the mere fact that a physician has been sued for medical malpractice is not probative of his or her truthfulness, competency, or knowledge. *Heshelman v Lombardi*, 183 Mich App 72, 85; 454 NW2d 603 (1990). Physicians who testify as expert witnesses in medical malpractices cases may be questioned about their own past poor outcomes because such is relevant to the expert's competency and the weight to be given his or her testimony. *Wischmeyer v Schanz*, 449 Mich 469, 480; 536 NW2d 760 (1995). Even then, counsel cannot ask general questions about the number of times an expert witness has been sued for medical malpractice, *Persichini v William Beaumont Hosp*, 238 Mich App 626, 629; 607 NW2d 100 (1999), or questions about malpractice claims unrelated to the subject matter of the expert witness's testimony, *Wischmeyer*, 449 Mich at 482.

In the instant case, plaintiff cites no authority for her proposition that defendant should be subject to the same type of cross-examination to which witnesses that have been qualified as experts by the trial court are subject. Although plaintiff testified to his education, training, and experience, to how he generally performs a submandibular gland excision, and to how his usual practice compared with plaintiff's surgery, he did not seek qualification at trial as an expert, and the trial court explicitly stated that it would have denied such qualification had he sought it. The fact that defendant has been sued for medical malpractice in the past is not probative of his truthfulness, competency, or knowledge, *Heshelman*, 183 Mich App at 85, nor does it make it more or less likely that he committed malpractice in the instant case. Thus, any probative value in cross-examining defendant about past medical malpractice cases in an attempt to attack his credibility would have been substantially outweighed by prejudice arising from the danger that such questioning would lead the jury to conclude that defendant had a proclivity for committing malpractice. See *Wlosinski v Cohn*, 269 Mich App 303, 311-312; 713 NW2d 16 (2005). For these reasons, we conclude that the trial court did not abuse its discretion by prohibiting plaintiff from cross-examining defendant relative to prior medical malpractice cases under 608(b).

On more solid ground is plaintiff's contention that the trial court abused its discretion by prohibiting the testimony of Dr. Morris regarding the parallels between this case and records in plaintiff's past medical malpractices cases. It is not clear from the record under which rule of evidence plaintiff sought to admit Dr. Morris's testimony at trial. However, Plaintiff contends on appeal that the evidence was admissible under 404(b) to show defendant's scheme, plan, or system of creating medical records that did not accurately reflect his interactions with patients where surgeries resulted in serious complications. We agree.

MRE 404(b) applies equally in both civil and criminal cases, *Lewis v LeGrow*, 258 Mich App 175, 207; 670 NW2d 675 (2003), and provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

In *Lewis*, we provided a concise formulation of the elements that must be satisfied for other acts evidence to be admitted in a civil case; these elements were originally set forth by our Supreme Court in *People v VanderVliet*, 444 Mich 52, 508 NW2d 1114 (1993):

> (1) the evidence is offered for some purpose other than character to conduct, or a propensity theory; (2) the evidence is relevant (having any tendency to make the existence of a fact more or less probable) and material (relating to a fact of consequence to the trial); (3) the trial court determines under MRE 403 that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice; and (4) the trial court may provide a limiting instruction under MRE 105. [*Lewis*, 258 Mich App at 208, citing *Vandervliet*, 444 Mich at 74-75.]

A proper purpose is one other than one establishing defendant's character to show he acted in conformity therewith. *VanderVliet*, 444 Mich at 74.

In the instant case, plaintiff sought to cross-examine defendant at trial about his allegedly fictitious medical records in order attack his credibility pursuant to 608(b). Referring to defendant's testimony that it was possible but unlikely that plaintiff had informed him of her post-operative complaints, plaintiff sought to attack defendant's credibility with evidence that other patients with serious post-operative complaints also alleged that defendant had failed to chart their complaints. Although evidence from records of past medical malpractice cases is not admissible under 608(b), it is admissible under MRE 404(b) for a non-character purpose. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000) ("That our Rules of Evidence preclude the use of evidence for one purpose simply does not render the evidence inadmissible for other purposes."). Further, evidence admitted for a proper purpose under MRE 404(b) may be proved by extrinsic evidence. *People v Jackson (Mem)*, 475 Mich 909, 910; 717 NW2d 871 (2006).

The evidence plaintiff seeks to admit satisfies the *VanderVliet* factors as set forth in *Lewis*. First, it is proper to admit the other acts evidence at issue for the non-character purpose of showing that defendant has a "scheme, plan, or system in doing an act." MRE 404(b). Plaintiff contended below that she repeatedly told defendant about her tongue biting and excessive drooling following surgery and that defendant failed to chart her complaints. Rather, defendant told her that she was healing nicely and that the symptoms she was experiencing was a normal part of the healing process. Dr. Morris's review of other malpractice cases revealed the same pattern. At trial, defendant testified that it was possible that plaintiff told him about her tongue biting and excessive drooling, but unlikely. In addition, he said that he was not specifically aware of any other patients who complained that he did not chart their post-operative complaints, even though several people making just such allegations had brought actions against defendant for medical malpractice. The evidence of defendant's recordkeeping in past malpractice cases cannot be used to attack defendant's credibility or to show character or propensity, but it can be properly used to show that defendant followed a particular pattern when it came to cases with serious complications resulting from surgery.

Second, the other acts evidence is relevant and material. Evidence is relevant if has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In the

instant case, the other acts evidence offered by plaintiff tends to show that defendant has a scheme, plan, or system of recordkeeping that severs any potential link between his surgery and the patient's post-operative complications by simply failing to chart them. If defendant's system is to omit mention of complications and patients' complaints to insulate himself from liability, this has the tendency of calling into question defendant's position that plaintiff's surgery and post-operative recovery were unremarkable, and supporting plaintiff's theory that the post-operative symptoms she experienced suggested an injury to her HGN.

Third, the probative value of the evidence is not substantially outweighed by unfair prejudice. MRE 403 requires the exclusion of relevant evidence only where its probative value is substantially outweighed by unfair prejudice. Unfair prejudice refers to the tendency that the jury will give undue or preemptive weight to the evidence. *Franzel v Kerr Mfg Co*, 234 Mich App 600, 618; 600 NW2d 66 (1999). Here, the other acts evidence has substantial probative value in showing that defendant has a scheme or plan when it comes to charting that minimized his exposure to liability by not recording patients' post-operative complaints. Arguing to the contrary, defendant asserts that the probative value of admitting the records under 404(b) is limited, given defendant's admission that he occasionally makes charting errors and the testimony at trial establishing that plaintiff experienced various post-operative complications. Admitting to occasional charting errors is one thing; having a "scheme, plan, or system" that insulates one from liability is another. Fairness and accuracy demands that the jury be presented with sufficient evidence to determine which it is. In addition, defendant always has the option of requesting an appropriate limiting instruction. MRE 105; *Lewis*, 258 Mich at 208.

Defendant contends that any error in the exclusion of evidence was harmless error because this case came down to a "battle of the experts," with plaintiff's expert opining that symptoms of an HGN injury are progressive, going from mild to severe, while defendant's experts insist that they are immediate. Defendant further contends that plaintiff's treatment records equally support the theories of both parties regarding whether HGN damage occurred during the surgery. However, defendant's record of plaintiff's treatment is silent regarding the tongue biting and drooling plaintiff experienced immediately after surgery. If such silence is due to the systematic omission of complications traceable to surgery, then excluding the other acts evidence was not harmless. Presented with evidence of such a system, the jury could reasonably have found it supported plaintiff's theory that her HGN was injured during surgery. The admission of the excluded evidence has significant probative value relative to a fair and accurate determination of whether defendant omitted plaintiff's post-operative symptoms because they were normal parts of the healing process, or because they were the type of complications from surgery that defendant systematically excludes from patients' records. Therefore, we conclude that substantial justice requires vacating the jury's verdict and remanding the matter to the trial court for a new trial. MCR 2.613 (A). In light of our disposition of this issue, we find it unnecessary to address plaintiff's remaining issues.

III. ISSUES ON CROSS APPEAL

Defendant raises two issues on cross appeal.[3]  First, he contends that the trial court abused its discretion by ruling that the evidence of defendant's alleged criminal conduct in Florida was admissible under MRE 608(b).  Prior to trial, defendant filed a motion in limine to exclude evidence of defendant's arrest, prosecution, and plea agreement in Florida.  The trial court ruled that the evidence at issue was not admissible under MRE 609, which addresses the circumstances in which evidence of a criminal conviction may be used to impeach a witness, because the incident did not lead to a conviction under Florida law.[4]  The trial court further ruled that relevant evidence of the Florida conduct was admissible under 608(b).  However, on the first day of trial, subsequent to argument from the parties, the trial court "added onto" its prior ruling, determining that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and concluding that it was inadmissible under MRE 403.  On cross appeal, defendant raises the issue of the admissibility of the evidence under 608(b) as "an alternative ground to affirm" which we need address only if we disagree with plaintiff's "position on this point in the main appeal."  Having not reached plaintiff's position on this point in the main appeal, we decline to address the issue in defendant's cross appeal.

Defendant also contends that the trial court erred by giving a res ipsa loquitur instruction. We disagree.  We review for an abuse of discretion the trial court's ruling regarding whether a jury instruction is applicable to the facts of the case.  *Swanson v Port Huron Hosp* (On Rem), 290 Mich App 167, 183; 800 NW2d 101 (2010).

The general rule in medical malpractices claims is:

[T]here is no presumption of negligence from the mere failure of judgment on the part of a doctor in the diagnosis or in the treatment he has prescribed, or from the fact that he has been unsuccessful in effecting a remedy, or has failed to bring about as good a result as someone else might have accomplished, or even from the fact that aggravation follows his treatment." *Jones v Porretta*, 428 Mich 132, 151-152; 405 NW2d 863, 872 (1987).

---

[3] For the sake of clarity, we will continue to use the terms "defendant" and "plaintiff" rather than "cross appellant" and "cross appellee" respectively.

[4] Under Florida law, when a defendant pleads *nolo contendere* and there is no adjudication of guilt, evidence of defendant's offense cannot be used to impeach defendant under Fla Stat 90.610, which is similar to MRE 609.  *Dopson v State*, 719 So 2d 37, 38 (Fla Dist Ct App, 1998).  "If the defendant successfully completes his probation he is not a convicted person but if the probation is violated the court may then adjudicate and sentence." *Thomas v State*, 356 So 2d 846, 847 (Fla Dist Ct App, 1978).  In the instant case, not only did defendant obtain an order withholding adjudication, but prior to the start of trial, the Florida court sealed defendant's records pursuant to Fla Stat 943.059.

Nevertheless, in certain situations, the doctrine of res ipsa loquitur permits a plaintiff to establish a prima facie case for negligence with circumstantial evidence. *Id*. at 150-51. "The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Id*.

In order to avail themselves of the res ipsa loquitur doctrine, plaintiffs must meet the following conditions:

"(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;

(2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;

(3) it must not have been due to any voluntary action or contribution on the part of the plaintiff"; and

(4) "[e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff." [*Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522, 525 (2005), quoting *Jones*, 428 Mich at 150-151.]

That the injury complained of does not ordinarily occur in the absence of negligence either must be supported by expert testimony or be within the common understanding of the jury. *Locke v Pachtman*, 446 Mich 216, 231; 521 NW2d 786 (1994).

In the instant case, Dr. Morris stated his opinion that plaintiff's injury is an event that normally would not have happened absent defendant's negligence. He opined that, had defendant identified the HGN and used the scalpel on the gland and not the surrounding tissue, where the scalpel likely came too close to the nerve, the nerve would have been protected. Dr. Morris acknowledged under cross-examination that injury to the nerve is a recognized complication of the type of surgery plaintiff underwent, but explained that, under the particular circumstances of plaintiff's surgery, there is no reasonable explanation for the injury other than negligence:

Because the – there wasn't a significant amount of disease in the gland. The outside surface was normal in appearance, according to the pathologist. There was [sic] no anatomical problems reported in the operative note as far as complications or anomalies or differences in Mrs. Merchand's neck that would have made injury to the nerve more likely.

There wasn't excessive bleeding or other conditions during surgery that would have made the nerve more difficult to protect or to identify, so under the circumstances of her operation and her illness, damage to the hypoglossal nerve is not an accepted complication, and the risk of hypoglossal nerve as we – is very, very low, as a consequence.

Defendant contends that Dr. Morris's testimony that injury to the nerve is a recognized risk of submandibular gland excision of which he informs his patients is inconsistent with his

assertion that the subject event is of a kind that ordinarily would not occur absent negligence, and thus does not satisfy the first res ipsa loquitur requirement. However, the phrase, "the event," refers to more than just the fact of the injury, but encompasses the circumstances under which the injury occurred. See *Wilson v Stilwill*, 411 Mich 587, 608, 610; 309 NW2d 898 (1981) (implying that even in the cases of a known and accepted complication, such as a post-operative infection, the circumstances surrounding the complication may give rise to an inference of negligence). Accordingly, the essence of Dr. Morris's testimony is that given plaintiff's condition and the lack of complications or anomalies, injury to her nerve during surgery is an event that normally does not happen absent negligence.

Defendant also observes that, Dr. Morris admitted that infection could be another precipitating factor for HGN injury, but did not take into account the infection that plaintiff developed eight days after surgery. This claim ignores Dr. Morris's considerable testimony regarding evidence in defendant's records of infection, and his conclusion that infection was "[a]bsolutely not" the cause of injury to plaintiff's HGN. That Dr. Morris did not give the same weight as does defendant to whatever evidence existed of plaintiff's post-operative infection does not mean that he did not consider it.

Finally, defendant argues that the res ipsa loquitur instruction was unwarranted because plaintiff pointed to Dr. Morris's testimony and claimed that she had "direct evidence" of malpractice by defendant. Direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Black's Law Dictionary* (10th ed). Regardless of how plaintiff characterized Dr. Morris's testimony, it is undisputed that the only person in the operating room who observed and had knowledge of how defendant used the harmonic scalpel was defendant.

Plaintiff's theory was that defendant injured her HGN during surgery. Dr. Schechter testified that plaintiff's symptoms were consistent with an injury to the nerve that occurred at the time defendant removed her submandibular gland, and Dr. Morris testified that, given the circumstances of the surgery, the injury would not have occurred absent negligence. Defendant does not dispute that plaintiff presented evidence sufficient to show that the harmonic scalpel was in the exclusive control of defendant, that plaintiff did not contribute actively and voluntarily to her injury, and that the true explanation of plaintiff's injury is more readily accessible to defendant than to plaintiff. *Woodard*, 473 Mich at 7. The trial court's decision to instruct the jury on res ipsa loquitur is supported by published authority and the facts of the case. We conclude, therefore, that trial court did not abuse its discretion by determining that a res ipsa loquitur instruction was warranted.

We reverse and remand for a new trial. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Stephen L. Borrello