## *In re* SMNE

Docket No. 251091. Submitted March 10, 2004, at Lansing. Decided October 5, 2004, at 9:15 a.m.

Scott R. and Maria E. Eickhoff petitioned the St. Joseph Circuit Court, Family Division, for the termination of Laura A. Eickhoff's parental rights to SMNE and for the adoption of SMNE by Maria Eickhoff, who had married Scott Eickhoff after his divorce from the respondent. The judgment of divorce had reserved for later decision the issue of the respondent's obligation for child support as the respondent was not employed at the time of the divorce. The judgment had also required the respondent to notify the friend of the court of any subsequent employment. The petitioners alleged that for two or more years before their petition, the respondent regularly and substantially failed to visit with the child, MCL 710.51(6)(b), and failed to provide regular and substantial support for the child, MCL 710.51(6)(a). After receiving evidence and inquiring into the respondent's ability to pay child support, the court, William D. Welty, J., issued an order terminating the respondent's parental rights. The respondent appealed.

The Court of Appeals *held*:

1. MCL 710.51(6) provides that if the parents of a child are divorced and if the parent having legal custody of the child subsequently marries and that person's spouse petitions to adopt the child, the court may issue an order terminating the rights of the other parent if the other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of two or more years before the filing of the petition and if the other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or, if a support order has been entered, has failed to substantially comply with the order for two or more years before the filing of the petition.

2. The trial court did not err in finding that, notwithstanding the respondent's claim that petitioner Scott Eickhoff had prevented her from having regular contact with the child, the respondent had failed to visit, contact, or communicate with the child during the relevant period.

3. A trial court considering a petition under MCL 710.51(6) may not consider both the noncustodial parent's ability to pay child support and whether that parent complied with a child support order. Where, as here, the issue of child support was reserved in the judgment of divorce and the noncustodial parent was not ordered to pay child support, there is no order of support and a court may properly inquire into the noncustodial parent's ability to pay child support. The trial court in this case correctly determined that the respondent had the ability to pay support yet neglected to do so for the relevant period given evidence that she had obtained employment and failed to notify the friend of the court of such employment.

Affirmed.

ADOPTION — CHILD SUPPORT — ABILITY TO PAY.

A court considering a petition for adoption brought by the spouse of a person with legal custody of a minor child from a previous marriage may consider the noncustodial parent's ability to pay child support or compliance with a child support order, but not both; where the judgment of divorce reserved for later decision the noncustodial parent's child support obligation and the noncustodial parent was not ordered to pay child support, there is no order of child support for which compliance can be determined and the court considering the petition for adoption may properly inquire into the noncustodial parent's ability to pay support (MCL 710.51[6][a]).

*Grubbs & Grubbs* (by *Debra Mehl Grubbs*) for Scott R. and Maria E. Eickhoff.

*Thomas J. Robertson*, guardian ad litem, for SMNE.

*Bird, Svendsen, Brothers, Scheske & Pattison, P.C.* (by *Robert K. Pattison*), for Laura A. Eickhoff.

Before: JANSEN, P.J., and MARKEY and GAGE, JJ.

PER CURIAM. Respondent appeals by right from the trial court's order terminating her parental rights to the minor child under § 51(6) of the Michigan Adoption Code, MCL 710.51(6), and raises two issues on appeal. We conclude that where the issue of child support was

reserved in the judgment of divorce and respondent was not ordered to pay any child support, the trial court properly determined that the "support order" provision in § 51(6)(a) did not apply; consequently, the court properly inquired into respondent's ability to pay. *In re Newton,* 238 Mich App 486, 491-493; 606 NW2d 34 (1999).

We also affirm the trial court's findings regarding § 51(6)(b): "The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition." Although respondent argued that petitioner-father prevented her from having regular contact with the child, she had a legal right to visit with the child under the terms of the divorce judgment. To the extent respondent felt that petitioner was unjustly and improperly denying her visitation rights, she should have sought assistance from the friend of the court or the divorce court, as she had in the past. For this reason, this case is distinguishable from *In re ALZ,* 247 Mich App 264, 273-274; 636 NW2d 284 (2001), and the trial court did not err in finding that respondent was not prevented from having regular and substantial contact with the child. Accordingly, we affirm the trial court's findings that petitioners met their burden of proof under § 51(6)(b).

The issue involving § 51(6)(a) requires more complex analysis. We initially note that the purpose of MCL 710.51(6) is to "foster stepparent adoptions in families where the natural parent had regularly and substantially failed to *support or communicate* and visit with the child," yet refuses or is unavailable to consent to the adoption. *In re Colon,* 144 Mich App 805, 810; 377 NW2d 321 (1985) (emphasis added). The provision in the parties' divorce judgment providing that respon-

dent's obligation to pay child support sets forth no amount and, in fact, states that the issue of support "shall be reserved." The order was entered after the trial court weighed respondent's ability to pay, and petitioner retained the right to request the trial court to review respondent's ability to pay. Therefore, when determining whether to terminate respondent's parental rights, it was proper for the trial court to inquire into her ability to pay support. *In re Newton, supra.*

MCL 710.51 provides in relevant part:

> (6) If the parents of a child are divorced . . . and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
>
> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

This Court has held that a trial court considering a petition for adoption under § 51(6) may not consider both the parent's ability to pay *and* whether the party complied with a support order. *Newton, supra.*

In the divorce judgment at issue here, the court stated in regards to child support:

> *IT IS FURTHER ORDERED* that Defendant's obligation to pay support shall be reserved as defendant is not presently employed and receives no income . . . . [Emphasis added.]

The divorce decree also provides that the

payor of support shall give the Office of the Friend of the Court the name and address of his/her employer. The payor

shall immediately give the office of the Friend of the Court notice of the name and address of any subsequent employer. The payor's current employer is: *DEFENDANT IS NOT EMPLOYED*. [Emphasis added.]

Our task now is to ascertain whether the reservation of child support in the judgment of divorce constituted a support order or judicial determination such that it was improper for the trial court to inquire into respondent's ability to pay child support for the purposes of MCL 710.51(6)(a).

In *In re Colon, supra* at 809-810, this Court noted that subsection 6(a) is somewhat ambiguous but, after careful statutory analysis, explained that this subsection addresses two separate situations: (1) where a parent, when able to do so, fails or neglects to provide regular and substantial support, and (2) where a support order has been issued and the parent fails to substantially comply with it. In *Colon,* the noncustodial parent was subject to a child support order and the issue was whether the custodial parent was required to prove that the noncustodial parent had the ability to pay support. In finding no such requirement, this Court reasoned that an "ability to pay is already factored into a child support order, and it would be redundant to require a petitioner under the Adoption Code to prove the natural parent's ability to pay as well as that parent's noncompliance with a support order." *Id.* at 812. Although the holding in *Colon* does not directly address the issue in this case, it does provide guidance. Clearly, the second clause in subsection 6(a) asks only if there was a failure of support, because an existing support order already answers the question of ability to pay. A court in deciding a termination and adoption case must follow the original determination regarding the respondent's ability to support the child in the support order as a matter already settled by a judgment. In

situations where the support order no longer accurately reflects such ability to pay, either parent may petition the court for modification of the order. MCL 552.17; MCL 722.720; *Kosch v Kosch*, 233 Mich App 346, 350; 592 NW2d 434 (1999). To require a court to inquire into the ability to pay in such cases would simply be a repetitious and inefficient use of judicial resources and would essentially allow a collateral attack of the support order. *Newton, supra* at 492. Consequently, only in cases where no support order exists is an inquiry into the ability to pay necessary or allowed. *Id.* Any other interpretation would allow a party to circumvent the official order of the court. *Id.* Such a reading of the statute is also consistent with its purpose as pronounced in *Colon*.

Thus, in *In re Newton, supra* at 488-489, 493, this Court held that the trial court did not err when it dismissed a petition for adoption where the respondent was paying under a modified support order, even though the payments on an arrearage were consumed by surcharges, and a large support arrearage was not reduced.

On the basis of our analysis of the foregoing cases we conclude that if there was indeed a support order in place addressing respondent's duty and ability to pay support for the child *by requiring payment of some sum of money*, the trial court could not properly inquire into respondent's present ability to pay support under the Adoption Code. In reviewing both the statutory language and the pertinent published decisions, we also conclude that the relevant sections of MCL 710.51(6) are essentially yardsticks to be used to measure the noncustodial parent's interest in being a parent as it pertains to permitting termination of parental rights. But, to be an effective yardstick, the test must measure

something; therefore, if an order *reserving or holding in abeyance* the establishment of a sum of money for support is a "support order" within the meaning of the second clause of subsection 6(a), that measure is meaningless. Moreover, *Newton* correctly holds that the amount of support should not be litigated again under the first clause of subsection 6(a), but it does not preclude a conclusion that an order reserving or holding in abeyance a determination of the amount of the noncustodial parent's child support obligation is not a "support order" within the meaning of subsection 6(a). Thus, we find that the plain language of the provision of the divorce decree in the instant case pertaining to support and the use of common sense require a conclusion that respondent was not ordered to pay child support. Indeed, the court "reserved" the issue for another time because at the time of the divorce decree respondent was unemployed. Consequently, because the court *did not set forth some sum of money that respondent* was required to pay for child support, there is no support order in place *under the circumstances of this case,* and the trial court properly inquired about respondent's ability to support her child under the first clause of subsection 6(a). We emphasize that our holding today pertains to the particular fact issue in this case and how the facts here affect the trial court's application of the two statutes involved.

Petitioners also rely on definitions of "support order" found in other statutes to support their argument and as reasons for affirming the trial court. Petitioners argue that § 51(6)(a) should be read in pari materia with these other statutes. In the Revised Uniform Reciprocal Enforcement of Support Act, MCL 780.151 *et seq.,* "support order" is defined as "a judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification,

revocation, or remission, regardless of the kind of action or proceeding in which it is entered." MCL 780.153b(9). Similarly, MCL 552.602(ff), formerly MCL 551.602(z), of the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq.*, defines "support order" as "an order entered by the circuit court for the payment of support whether or not a sum certain." Oftentimes, the amount ordered is based on a percentage of the noncustodial parent's income or determined through some other means. Yet, it is for *some sum of money.* So, again, we find petitioners' argument meritorious. When a court reserves the issue of child support in a divorce judgment, it means that one parent is *at that point not ordered* to pay support; it does not extinguish a parent's *obligation* to support her child. Furthermore, a court's ruling to reserve child support in a divorce case should not foreclose in another, later proceeding the determination that a noncustodial parent has or had the ability to pay support. Such a rule would lead to illogical results. And, in this case, the inquiry certainly was valid. As pointed out previously, respondent in this case had been employed for quite sometime after entry of the judgment of divorce, but had failed to notify the friend of the court as required. The only reason the court reserved the issue of support in this case was because at the time the decree was entered, respondent was unemployed. When the court inquired into respondent's ability to pay in the instant proceeding, it determined that she had been working for quite sometime, had failed to notify the friend of the court as required, and had still failed to provide any support for her child. Under these facts, respondent was not required to pay support pursuant to a support order and the trial court correctly held that petitioners were required to prove that respondent had the ability to pay regular and substantial support but had neglected to do so for two

or more years. Because petitioners presented substantial evidence to support the court's findings, the judgment terminating respondent's parental rights was properly entered.

We affirm.