*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re K SHOCKLEY-WAGNER, Minor.

UNPUBLISHED
June 16, 2022

No. 358516
Eaton Circuit Court
Family Division
LC No. 20-020339-NA

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

The circuit court terminated the parental rights of KSW's parents following a petition filed by the child's legal guardians. The court's decision was adequately supported by evidence that the parents had not financially supported, regularly visited, contacted, or communicated with their child for a period of two years. Only respondent-mother has challenged the termination, but she could present no evidence countering that she "regularly and substantially failed or neglected, without good cause" to visit, contact, or communication with KSW during the relevant period. We affirm.

## I. BACKGROUND

Petitioners are the mother and stepfather of respondent-mother. They have served as KSW's guardians since December 2017. On January 9, 2020, petitioners filed a petition to terminate the parental rights of respondent and the child's father. The circuit court took jurisdiction over KSW under MCL 712A.2(b)(6), which provides for court jurisdiction:

> If the juvenile has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and the juvenile's parent meets both of the following criteria:
>
> (A) The parent, having the ability to support or assist in supporting the juvenile, has failed or neglected, without good cause, to provide regular and substantial support for the juvenile for 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for 2 years or more before the filing of the petition. . . .

-1-

(B) The parent, having the ability to visit, contact, or communicate with the juvenile, has regularly and substantially failed or neglected, without good cause, to do so for 2 years or more before the filing of the petition. . . .

The court ultimately terminated respondent's parental rights under MCL 712A.19b(3)(f), which similarly provides:

The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:

(*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

(*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

Respondent does not contest on appeal that she did not provide financial support for her son. Instead, she challenges the circuit court's conclusion that despite having the ability to do so, she regularly and substantially failed or neglected without good cause to visit, contact, or communicate with KSW.

Petitioners spent significant time in the circuit court, and in their appellate brief, describing respondent's physical and medical neglect of KSW while the child was in his mother's care. They also exhaustively described the child's special needs. However, the court did not take jurisdiction over the child or terminate respondent's parental rights based on this evidence and it is largely irrelevant to the issue on appeal. It is important to note though that KSW has lived with petitioners since he was three years old. Respondent lives two to three hours away. But respondent lives with her father rent-free and has transportation. Respondent rejected petitioners' offers to help her find housing and a job nearer her son. Respondent's main form of communication with petitioners and KSW was through Facebook Messenger. Virtual and phone communication between respondent and KSW was difficult given KSW's young age and also because he has Autism Spectrum Disorder.

## II. ANALYSIS

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). We review for clear error a court's determination that a statutory ground for termination has been proven by clear and convincing evidence. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted); MCR 3.997(K). A decision is clearly erroneous "if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (cleaned

up). We review de novo a lower court's interpretation and application of relevant statutes. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

As noted, the court found termination supported under MCL 712A.19b(3)(f), and respondent contests only the second part of that factor—that she regularly and substantially failed or neglected, without good cause to visit, contact, or communicate with KSW for a two-year period. The two-year period is measured from the date of filing the petition. *In re Caldwell*, 228 Mich App 116; 576 NW2d 724 (1998) (analyzing a substantively identical provision in MCL 710.51(6)(b)). Petitioners filed their initial petition on January 9, 2018. Accordingly, the court was required to determine whether from January 9, 2018 to January 9, 2020, respondent had "the ability to visit, contact, or communicate with" KSW, but "regularly and substantially failed or neglected, without good cause, to do so." MCL 712A.19b(3)(f)(*ii*).

Even viewing the evidence in the light most favorable to respondent, the circuit court did not err. Respondent had very limited in-person contacts with KSW. According to the testimony of respondent and her mother, respondent saw KSW on Christmas in 2018. Respondent visited KSW on Easter in 2019 and came to petitioners' home for three two-hour visits in the summer of 2019. Respondent did not visit KSW after he underwent eye surgery in 2018. The majority of respondent's contacts were through Facebook Messenger's video call feature. Given KSW's young age and special needs, respondent's video interactions with KSW were usually less than five minutes long. During the majority of video calls, respondent spoke to petitioners rather than with KSW. And respondent would sometimes go several weeks without contacting petitioners at all. Respondent's final video visit was in September or October 2019. Petitioners requested respondent stop calling or initiating video calls because KSW's therapist and physician believed these communications were traumatic for the child.

Respondent complains that petitioners blocked many of contacts. Specifically, respondent preserved screenshots evidencing that petitioners declined 133 Facebook Messenger chats and 33 video calls from January 2018 through October 2019. Petitioners explained that these rejected contacts often came after KSW's bedtime or during a meal. The circuit court addressed this issue as follows:

> So even if we lump those together that's 166 days out of the two years, which is 730 days; that takes us down to 22.7 percent by my calculation of the days, again, even if every communication was on a separate day. But based on the testimony of [grandmother] in this case . . . she says that . . . most of those communications were between mother and daughter and not between daughter and her son . . . . [A]nd the conversations sometimes were . . . [respondent] was distracted sometimes by either her father or a friend she had in the house. And . . . I fully understand that communicating with a young child, especially a young special needs child, it's . . . extremely hard to communicate . . . over Facetime or Messenger or any other mode that there is . . . . [B]ut I find very credible from [grandmother's] testimony that there was never any communication between [respondent] and [KSW] over telephone. So . . . my only interpretation of that is that [respondent] has tried to put herself in the best light, as far as keeping communications open, but frankly, based on all the evidence that I've . . . heard in this trial today I do not find that there has been, under the facts and circumstances here, any regular or substantial

communications even though one of the years, or at least most recently, there's more attempts, at least as far as regular attempts, it's been very spotty.

In respondent's view, the circuit court improperly focused on whether there were regular and substantial *successful or attempted* contacts, rather than whether there were regular and substantial *failures* to contact. However, looking at the inverse of the court's finding—that respondent failed to contact KSW for 564 days or 77.3% of the statutory period—reveals that respondent's challenge is unfounded. Record evidence supported the court's calculations and we find no clear error.

Respondent also urges that her lack of contact from October 2019 to January 9, 2020 cannot be held against her. Respondent argues that petitioners denied her access to KSW during that period. The question is whether petitioners' refusal to allow access negated respondent's "ability to visit, contact, or communicate" under MCL 712A.19b(3)(f)(*ii*). We again discern no error. MCL 712A.19b(3)(f)(*ii*) provides three alternative methods for interaction between a respondent and his or her child—visits, contacts, or communications. Petitioners discontinued video chats and phone calls between respondent and KSW in October 2019 on the recommendation of KSW's therapist and physician. Respondent could have sent KSW cards, letters, or presents. She could have requested in-person visits or even therapeutic visits facilitated by KSW's counselor. Respondent did none of these things. Accordingly, respondent maintained the ability to visit, contact, or communicate with her child, but failed to do so.

Moreover, respondent could have enforced her legal right to visit, contact, or communicate with KSW. Petitioners were granted a regular guardianship of KSW under MCL 700.5204 of the Estates and Protected Individuals Code, MCL 700.1101, *et seq.* Under MCL 700.5204(5), "the court may at any time . . . order reasonable parenting time and contact of the minor ward with his or her parents." Yet, respondent never petitioned the court for a parenting-time order. See *In re SMNE*, 264 Mich App 49, 51; 689 NW2d 235 (2004). And no evidence supports that a petition would have been required, since petitioners never disallowed in-person visits.

Though not dispositive on the question of whether respondent failed to "regularly and substantially" visit, contact, or communicate with KSW, we also note the quality of the contacts between mother and child. Given KSW's diagnoses, KSW did not truly engage in the video chats. He was often distracted and lost interest quickly. Respondent often grew frustrated with KSW and hung up on him on several occasions. Even knowing these limitations, respondent made no effort to visit her child in-person more often. As a result, mother and son did not cultivate their relationship or preserve their bond. The purpose of MCL 712A.19b(3)(f)(*ii*) is to ensure a parent maintains a relationship with the child. Respondent did not meet that goal here.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett