*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. S. BUCKLEY, Minor.

UNPUBLISHED
February 21, 2023

No. 361772
Oakland Circuit Court
Family Division
LC No. 2016-846659-NA

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his daughter pursuant to MCL 712A.19b(3)(f) and (g). On appeal, respondent argues only that the trial court erred when it assumed jurisdiction over the child under MCL 712A.2(b)(6). For the reasons set forth in this opinion we affirm.

## I. BACKGROUND

Petitioners are the maternal grandparents of the minor child. Their daughter gave birth to the child in 2013. Although the child briefly lived with her mother, she has spent nearly her entire life, at least since the age of one or two, living with and being cared for by petitioners. In 2015, mother experienced a nonfatal drug overdose that required her hospitalization and intubation. Initially, Children's Protective Services investigated placing the child in respondent's care, but respondent's outstanding warrants and other criminal matters precluded this placement. Consequently, in 2015, the probate court granted petitioners a full guardianship over the child. The appointment order provided that any court-ordered child support was to be paid to the guardian. The guardianship also included a transition plan that required the parents to obtain employment, maintain stable housing, develop a plan for appropriate child care, continue in counseling, refrain from the use of drugs and alcohol, and comply with their respective probation requirements. Parenting time was to be "graduated" and as agreed to by the parties.

In January 2018, the mother died unexpectedly and substance abuse was a contributing factor. At an August 2018 review hearing, petitioners informed the probate court that respondent had not visited the child since May 2018. In its order that followed, the probate court suspended respondent's parenting time until further order of the court. On that same day, respondent was charged as a third-offense habitual offender with possession of cocaine and delivery and

manufacturing of a controlled substance. On January 30, 2019, respondent was sentenced to 3 to 50 years in prison.

In February 2019, respondent's child support obligation was administratively suspended during his incarceration, but any arrearages would be preserved and payable through any income sources or assets that were or would become available. Respondent's court-ordered child support obligations initially arose in 2013. After the guardianship was established, respondent's child support obligation was redirected to petitioners. Between August 31, 2016 and January 3, 2017, at least four support enforcement orders were entered in an effort to compel respondent to pay his child support obligations. As of January 3, 2017, respondent owed $4,070.05 in past-due child support.

In April 2021, petitioners filed a petition requesting that the court take jurisdiction over the child and thereafter terminate respondent's parental rights. Following hearings that began in September 2021 and concluded in December 2021, the trial court found grounds to take jurisdiction over the child under MCL 712A.2(b)(6). It thereafter held that there existed clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(f) and (g). After a best-interest hearing in April 2022, the court found that termination of respondent's parental rights was in the child's best interests. This appeal followed.

## II. ANALYSIS

For his sole argument on appeal, respondent challenges the trial court's assumption of jurisdiction under MCL 712A.2(b)(6).

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock,* 442 Mich 101, 108; 499 NW2d 752 (1993). The adjudicative phase determines whether the trial court may exercise jurisdiction over the children. *Id.* To establish jurisdiction, the petitioner must prove by a preponderance of the evidence that a statutory basis exists under MCL 712A.2(b). *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). A "preponderance of the evidence" means evidence of a proposition that when weighed against the evidence opposed to the proposition "has more convincing force and the greater probability of truth." *People v Cross,* 281 Mich App 737, 740; 760 NW2d 314 (2008). This Court reviews a trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). To the extent that the jurisdictional issue presents a question of statutory interpretation, this Court reviews that issue de novo. *In re LaFrance,* 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court exercised jurisdiction over the child under MCL 712A.2(b)(6), which provides that a court has jurisdiction over a child in the following circumstances:

> If the juvenile has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and the juvenile's parent meets both of the following criteria:
>
> (A) The parent, having the ability to support or assist in supporting the juvenile, has failed or neglected, without good cause, to provide regular and substantial support for the juvenile for 2 years or more before the filing of the

petition or, if a support order has been entered, has failed to substantially comply with the order for 2 years or more before the filing of the petition. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

(B) The parent, having the ability to visit, contact, or communicate with the juvenile, has regularly and substantially failed or neglected, without good cause, to do so for 2 years or more before the filing of the petition. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

The jurisdictional statute at issue in this appeal has a financial component (subsection (A)) and a contact component (subsection (B)). Both criteria must be met before a court can exercise jurisdiction under this provision of the Juvenile Code. Moreover, the financial component has a two-part inquiry. In addition, there is a temporal element to the statute. Respondent's actions during the two years preceding the filing of the petition are the most relevant. The petition was authorized on April 19, 2021. Accordingly, the relevant time period is the two-year period between April 19, 2019 and April 19, 2021. Respondent was incarcerated in January 2019, and he was imprisoned for the entire two years preceding the filing of the termination petition.

Turning first to the financial component, i.e., MCL 712A.2(b)(6)(A), respondent asserts that because a child support order existed in this case, the only relevant inquiry is whether he substantially complied with the support order. He then argues that a court could not find that he failed to substantially comply with the support order for two years or more before the filing of the petition because the support order was administratively suspended in February 2019. Respondent argues that the existence of a support order triggers the application of the second clause of MCL 712A.2(b)(6)(A) and precludes consideration of whether he had the ability to provide support and failed to do so. However, contrary to respondent's arguments, we conclude that, under the circumstances, there was no support order in effect, and therefore, the jurisdictional analysis requires consideration of whether respondent, during the two years that preceded the filing of the petition, had the ability to assist in the support of his child, but failed, without good cause, to do so.

Respondent does not cite any published authority, directly on point, addressing the provisions of MCL 712A.2(b)(6)(A). However, two published opinions, one cited by respondent, addressing similar language in the Michigan Adoption Code, MCL 710.21 *et seq.*, are instructive by analogy.

In *In re SMNE,* 264 Mich App 49; 689 NW2d 235 (2004), a case involving a stepparent adoption, this Court interpreted MCL 710.51(6), which at the time provided:

(6) If the parents of a child are divorced . . . and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child has failed or neglected to provide regular or substantial support for the child or if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

In *In re SMNE*, the parents' judgment of divorce provided that the father's obligation to pay support was "reserved" because he was not presently employed and received no income. *Id.* at 52-53. This Court initially recognized that "if there was indeed a support order in place addressing respondent's duty and ability to pay support for the child by *requiring payment of some sum of money,* the trial court could not properly inquire into respondent's present ability to pay support under the Adoption Code." *Id.* at 54. The Court noted that the statute was essentially a "yardstick" used to measure the noncustodial parent's interest in being a parent. However, the Court also commented that: "But, to be an effective yardstick, the test must measure something; therefore, if an order *reserving or holding in abeyance* the establishment of a sum of money for support is a "support order" within the meaning of the second clause of subsection 6(a), that measure is meaningless." *Id.* at 54-55. Accordingly, the Court held that an order reserving or holding in abeyance a determination of the amount of the noncustodial parent's child support is not a "support order" within the meaning of Subsection (6)(a). The Court further explained:

Thus, we find that the plain language of the provision of the divorce decree in the instant case pertaining to support and the use of common sense require a conclusion that respondent was not ordered to pay child support. Indeed, the court "reserved" the issue for another time because at the time of the divorce decree respondent was unemployed. Consequently, because the court *did not set forth some sum of money that respondent* was required to pay for child support, there is no support order in place *under the circumstances of this case*, and the trial court properly inquired about respondent's ability to support her child under the first clause of subsection 6(a). We emphasize that our holding today pertains to the particular fact issue in this case and how the facts here affect the trial court's application of the two statutes involved. [*Id.* at 55.]

This Court in *In re SMNE* held that because there was no support order, the trial court properly inquired into the respondent's ability to pay under the first clause of MCL 710.51(6)(a).

By contrast, respondent relies on this Court's decision in *In re Talh,* 302 Mich App 494; 840 NW2d 398 (2013), in which this Court interpreted the same version of MCL 710.51(6)(a) in the context of a stepparent adoption. In *In re Talh*, the parent was incarcerated and the lower court modified an earlier support order, "reducing his child-support payments to $0 a month." *Id.* at 596. The respondent filed a motion for summary disposition under MCR 2.116(C)(10), arguing that there was no dispute that he had complied with the child support order for approximately 23 months before the petitioners filed the petition. In response, the petitioners argued that the respondent was not entitled to summary disposition because he failed to comply with his support order in the years before its modification. The Court primarily addressed the relevant period of

inquiry, holding that when applying MCL 710.51(6), courts are to look at the two-year period immediately preceding the filing of the petition. *Id.* at 597-598. This Court then held that summary disposition was properly granted because "*the support order in effect* required $0 in monthly payments and petitioners concede that respondent had complied with the order since the time it was modified." *Id.* at 599. This Court concluded its opinion with the following request:

> However, we urge the Legislature to revisit MCL 710.51(6) to address a situation as the present one. It seems ill-advised indeed for a person to fail to provide child support, accrue arrearage, and then fail to fall within the parameters of the statute because of criminal actions leading to his or her incarceration and a resultant modification (to zero) of an earlier child support order. [*Id.* at 599.]

Following this Court's decision in *In re Talh,* MCL 710.51(6)(a) was amended by 2016 PA 143, effective September 5, 2016, to additionally provide that "[a] child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered."

We conclude the analysis in *In re SMNE* applicable to this case. This Court in *In re Talh* assumed the existence of a "support order," but it never explicitly addressed whether an order that specifically provides for a payment of "$0.00" constitutes a child support order under the statute. By contrast, in *In re SMNE,* this Court squarely addressed the situation where a support obligation was reserved or held in abeyance, and concluded that under such circumstances, there was no support order in place. The Court emphasized that there is no support order in place where the order fails to set forth a sum of money that a respondent is required to pay. *In re SMNE,* 264 Mich App at 55. The circumstances in this case are more similar to the facts in *In re SMNE.*

In the instant case, although the parties did not provide a copy of the order that purportedly relieved respondent of his child support obligations during his incarceration, the parties do not dispute that the order suspended respondent's support obligation while incarcerated. This understanding is consistent with the Friend of the Court (FOC) petition, which requested, in pertinent part:

> IT IS THEREFORE REQUESTED THAT:
>
> 1. A Uniform Support Order (USO) enter that modifies the Judgment filed in this matter to provide that the payer's current support obligation be administratively suspended while the payer is incarcerated, effective the first day of the month following the Certificate of Mailing Date of the attached Proposed USO, and reinstated the first day of the month following the date of the payer's release from incarceration.
>
> 2. Any arrearage that is due shall be payable forthwith through any income or assets that are available to the Payer before, during, or after the period of incarceration.
>
> 3. The Payer shall report his or her release from incarceration to the Oakland County Friend of the Court in writing immediately upon release.

4. Either party may file objections to the attached Proposed USO within twenty-one (21) days of the Certificate of Mailing Date of the attached Proposed USO, and a hearing will be scheduled before the assigned Oakland County Friend of the Court referee. (A payee may consider filing an objection if the payee can show that the payer has income or assets from which support could be paid.)

Respondent does not contend that the order that issued did not follow the language of the FOC petition. Indeed, respondent expressly testified at the hearing below that his child support "was suspended."

Where a support order has been "suspended," it ceases to remain active or operative. That is, there is no continuing support order in place. This suspension of support payments essentially reserved the support issue until a later date, similar to the order in *In re SMNE*. Applying the rationale from *In re SMNE*, a support order was not in place in this case for purposes of MCL 712A.2(b)(6)(A). As a result, petitioners were required to demonstrate that respondent, having the ability to support or assist in supporting the child, failed or neglected, without good cause, to provide regular and substantial support for the child for two years or more before the filing of the petition. After reviewing the record, we conclude that a preponderance of the evidence established that in the two-year period preceding the filing of the petition, while respondent was incarcerated, he still had the ability to support or assist in supporting his child and failed to do so without good cause.

Although respondent was not required by a court order to support his child, he clearly had the ability to provide some type of financial assistance to petitioners for the child's care. According to respondent's fiancé and mother to one of his other children, respondent provided financially for his other three children while in prison. She explained that if she or any of the children needed something, or if they needed extra help, they informed respondent, and he would find a way to get them what they needed. As an example, when respondent's teenage son needed a pair of shoes, respondent called one of his friends, and that friend took the child to get new sneakers. Also, respondent's sister sent money to provide for the children. When respondent received his stimulus check, birthday presents were sent to the children on respondent's behalf. Indeed, at the time of the adjudication hearing, respondent's fiancé was actually waiting for clothes for the children that were purchased from respondent's stimulus money. The record, however, is devoid of any evidence that respondent similarly provided for the child that is the subject of these proceedings.

Petitioners testified that respondent did not consistently or substantially provide any financial support for the child. There was some testimony that respondent, while incarcerated, filed his 2018 federal income taxes so that he would be eligible for a federal stimulus check. Respondent represents in his brief on appeal that his 2020 stimulus check was intercepted and a payment of $1,064.81 was credited to the balance owed petitioners. However, respondent testified that when his incarceration began in January 2019, he owned approximately $4,000 in back child support. Thus, even if the payment of approximately $1,000 could be attributed to respondent, and not as a consequence of federal relief policy, this one-time payment still would not constitute "regular and substantial support for the juvenile." We therefore conclude that a preponderance of the evidence supports the trial court's finding that during the two years preceding the filing of the

-6-

petition, respondent had the ability to assist in supporting the child yet failed to do so without good cause.

Turning to the requirements of MCL 712A.2(b)(6)(B), a preponderance of the evidence also supports the trial court's finding that respondent failed, without good cause, to contact, visit, or communicate regularly with the child during the two years preceding the filing of the petition. Respondent contends that because he was incarcerated and his parenting time was suspended in August 2018, there existed good cause for his failure to maintain contact with the child. However, even if respondent could not visit the child because of his incarceration and the court's 2018 order, he could have complied with the statute by contacting or communicating with the child. See, e.g., *In re Caldwell,* 228 Mich App 116, 121; 576 NW2d 724 (1998). Respondent retained the ability to send cards and letters or make telephone calls. At the time of the adjudication, respondent had been in prison for over three years. Petitioners testified that between August 2018 and the filing of the petition in April 2021, she did not receive any communication from respondent. There were no phone calls, letters, or cards. After filing the petition in this case, petitioners received a birthday card from respondent for the child. Respondent claimed that he sent three birthday cards to the child during his three-year incarceration, but admitted that he did not send any other correspondence to her. Conversely, respondent wrote to his teenage daughter using the Jpay system and he spoke on the phone to all three of his other children regularly, indeed, every day or every other day. His sister put money on the children's phones so that they could speak with respondent. When asked if his sister did the same for this child, respondent indicated that she did not. He then made excuses for the omission, claiming that he did not have the child's telephone number and was not even aware if she had a phone. The child was eight years old at the time of the adjudication. The guardianship had been in place for six years, and respondent's relationship with petitioners dated back to before the child's birth. Respondent also acknowledged that nobody in prison prevented him from writing and sending cards to the child. The trial court reasonably could find that any suggestion by respondent that he could not figure out how to communicate, either by telephone or mail, with the child was highly suspect.

Regarding respondent's ability to see the child, there was testimony that between the suspension of his parenting time in August 2018 and the time he was incarcerated in January 2019, respondent never attempted to reinstate visitation. Similarly, during his three-year incarceration, respondent did not file a motion to reinstate visits, he did not request visits from the guardians, and he made no effort to communicate with the child. Respondent's conduct during his incarceration was consistent with his pattern of behavior when he was at liberty. There was overwhelming evidence that during the entire six-year guardianship, respondent did not regularly visit the child. The evidence unequivocally demonstrated that respondent had avenues that he could have pursued if he wished to maintain a relationship with the child and he did not pursue any of them.

In sum, the record demonstrates that a preponderance of the evidence established that during the two years preceding the filing of the petition, respondent had the ability to support or assist in supporting the child, yet failed to do so without good cause, and further, that he had the ability to contact and communicate with the child, yet failed to regularly and substantially do so without good cause. Consequently, the trial court did not err when it exercised jurisdiction over the child under MCL 712A.2(b)(6).

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Noah P. Hood