*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE IWR, MINOR.

UNPUBLISHED
June 22, 2023

No. 363762
Emmet Circuit Court
Family Division
LC No. 22-001551-AY

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

In this stepparent adoption proceeding, respondent appeals as of right the trial court's order terminating her parental rights to her minor child. Because we conclude that the trial court did not clearly err in determining that clear and convincing evidence established the statutory grounds for terminating respondent's parental rights and proceeding with the petition for stepparent adoption, we affirm.

## I. BACKGROUND FACTS

Petitioner-father and respondent-mother were never married. Father acknowledged paternity pursuant to MCL 722.1001, and the circuit court entered an initial custody and support order on August 23, 2012. Mother was granted custody, and father was ordered to pay child support. In early 2019, the parents were awarded equal parenting time.

On December 5, 2019, father filed a verified ex parte motion alleging, *inter alia*, that mother was using methamphetamine, had left IWR in his custody for more than two weeks and not returned, custody of mother's other minor child, IWR's younger half-brother, had been awarded to respondent's parents, respondent was homeless, and she had posted on Facebook that she wanted to take IWR and leave the state. The trial court entered an ex parte order placing IWR in father's "sole care and custody." Respondent was ordered to pay monthly child support of $238. Although respondent's parenting time was suspended until further order of the court, she was not prohibited from having other contact with IWR. Respondent did not object to entry of the order.

On June 30, 2020, respondent was ordered to show cause why she should not be held in contempt of court for failing to pay child support. She was $1,479 in arrears at this time. As of November 6, 2020, respondent's arrearage had increased to $1,755, when an income-withholding order was established and the show-cause proceeding was dismissed.

By January 4, 2021, respondent was again ordered to show cause for being $1,866 in arrears on her child-support payments. She failed to appear, and a bench warrant was issued for her arrest. By February 15, 2022, respondent owed $4,971.08 in child support. The bench warrant was discharged and the show-cause proceedings were adjourned for monitoring because respondent reportedly had a new job and had made a small payment.

On March 23, 2022, a new income-withholding order was entered, and the show-cause proceedings were again adjourned to allow further monitoring. The show-cause proceedings were dismissed on June 23, 2022, because of the income withholding payments; respondent still owed $1,681.18 in past-due support.

On July 5, 2022, respondent filed a motion to establish parenting time, asserting that she had completed drug treatment, had been sober for eight months, was employed, and had a suitable home with her parents. Two weeks thereafter father and his wife filed a petition for stepparent adoption and later filed a supplemental petition in which they sought to terminate mother's parental rights. Respondent's petition for parenting time was adjourned pending the results of the stepparent adoption proceedings.

The trial court terminated respondent's parental rights because it concluded the evidence clearly and convincingly showed that for at least two years she had not substantially complied with a child-support order, having failed to pay any support for extended periods of time and accumulating substantial arrearages, including a child-support arrearage of more than five months at the time the petition was filed. The trial court also found that despite being able to do so respondent had not regularly and substantially visited, contacted, or communicated with the child. Respondent now appeals.

## II. STANDARD OF REVIEW

This Court reviews a finding that a statutory ground for termination has been proved by clear and convincing evidence for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A decision qualifies as clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted).

## III. ANALYSIS

The trial court did not clearly err in concluding that there was clear and convincing evidence to support a statutory ground to terminate respondent's parental rights. The trial court terminated respondent's parental rights pursuant to MCL 710.51(6), which states in pertinent part as follows:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions . . . of this chapter, and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the

court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. . . .

> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

"[I]n applying MCL 710.51(6), courts are to look at the two-year period immediately preceding the filing of the termination petition." *In re TALH*, 302 Mich App 594, 597-598; 840 NW2d 398 (2013). Petitioners in a stepparent adoption proceeding have the burden of establishing by clear and convincing evidence that termination of the noncustodial parent's parental rights is warranted. *In re Hill*, 221 Mich App 683, 691; 562 NW2d 254 (1997).

The evidence clearly and convincingly shows that respondent failed to substantially comply with a child-support order for the two-year period immediately preceding the July 19, 2022 petition for stepparent adoption. A court deciding the issue of termination of parental rights in an adoption case "must follow the original determination regarding the respondent's ability to support the child in the support order as a matter already settled by a judgment." *In re SMNE*, 264 Mich App 49, 53; 689 NW2d 235 (2004). The court does not inquire into a respondent's ability to provide support where a child support order has been entered because the "ability to pay" has already been factored into the order. *Id.* at 54.

Respondent argues that the trial court clearly erred when finding that she had not substantially complied with the child support order because most of her child support arrearage was paid at the time the petition was filed. However, as the trial court noted, the purpose of child support is to ensure that the child's immediate needs are cared for on a continuing basis. *Landry v Roebuck*, 193 Mich App 431, 434; 484 NW2d 402 (1992). This Court recently determined that "under MCL 710.51(6)(a), a parent substantially complies with a child support order when they have made a considerable quantity of the payments required by the order." *In re NRC, Minor*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362915); slip op at 4. Respondent asserts that the trial court employed a legal standard for "substantially comply" not comporting with this recent decision, given that she had paid $6,522 of the $7,378 support obligation, including a large, lump-sum payment.

Respondent argues that *In re NRC* supports her position that she substantially complied with the trial court's child support order. But the facts in this case are distinguishable from those in *In re NRC*. In that case, the noncustodial parent paid child support for 13 of the months in the applicable two-year period, and reduced or eliminated any arrearage by making several lump-sum payments. At the time the petition was filed, the noncustodial parent was only $146, or about one week, in arrears. In the present case, respondent was ordered to pay $238 per month effective on December 5, 2019, which remained in effect for the applicable two-year period. Between July 19,

2020, and July 19, 2022, respondent made only 11 of the 24 monthly payments when they were due. Twice during the two-year period, she made no child support payments for periods of six and seven months, respectively. Respondent was the subject of two show-cause proceedings, a bench warrant for her arrest, and ongoing monitoring and income withholding orders because she failed to comply with the child support order. Unlike the noncustodial parent in *In re NRC*, she did not often make large payments to reduce or eliminate the arrearage. Respondent made only one large payment of $3,173 in May 2022, which was applied to her past-due support obligation, and at the time the petition was filed she was $1,245.19, or the equivalent of more than five months, in arrears. Undisputed evidence supported the trial court's conclusion that other than buying some clothes that remained in a box at her parents' house respondent provided no additional support for the child during that time, such that only petitioner-father met IWR's immediate needs for food, clothing, and other care. Thus, employing the *In re NRC* legal definition of "substantially comply" to the facts of this case does not warrant reversal.

Moreover, the evidence clearly and convincingly showed that respondent had the ability to visit, contact, or communicate with the child, but regularly and substantially failed or neglected to do so for a period of two years or more preceding the filing of the petition. Terminating a noncustodial parent's parental rights in a stepparent adoption proceeding is proper when the noncustodial parent has both failed to substantially comply with a child support order and, despite having the ability to do so, has regularly and substantially failed to visit, contact, or communicate with the child for a period of 2 years preceding the filing of the petition. *In re Simon*, 171 Mich App 443; 431 NW2d 71 (1988).

It was undisputed that, although respondent's parenting time had been suspended by court order, there was no legal barrier to her contacting or communicating with IWR. It was further undisputed that respondent had no in-person or telephone contact with IWR during the two-year period, and did not attempt to modify the December 5, 2019 order until July 5, 2022, two weeks before the adoption petition was filed, at which time IWR had been in petitioners' care for more than two and a half years.

Respondent argues that the trial court clearly erred in finding that she had the ability to visit, contact, or communicate with IWR because it did not properly consider petitioner-father's efforts to keep her out of IWR's life. When a custodial parent takes affirmative steps to prevent a noncustodial parent from contacting a child, the noncustodial parent lacks the ability to visit, contact, or communicate with the child. *In re ALZ*, 247 Mich App 264, 273; 636 NW2d 284 (2001). In other words, a custodial parent may not refuse a noncustodial parent contact with the child and then use that lack of contact against the noncustodial parent to support a petition for stepparent adoption. *Id.* at 277.

In this case, respondent argues that petitioner-father unilaterally determined that she would not have contact with IWR unless she petitioned the trial court for reinstatement of her parenting time. Respondent highlights the evidence that respondent-father cut off contact between the child and his maternal grandmother, who was the guardian of IWR's half-brother, after learning that IWR had received a Valentine's Day card and gift from respondent while in the maternal grandmother's care. Respondent contends that this demonstrated petitioner-father's steadfast resolve to prevent respondent from having any contact with IWR, even at the expense of the child's

close and healthy relationship with both his maternal grandmother and his half-brother. This claim is unpersuasive.

The trial court reasonably concluded that respondent was able to re-establish and maintain contact with IWR because she understood that she had the prerogative to file a motion to reinstate her parenting time whenever she wished. Moreover, her contention that she was unable to contact petitioner-father was not supported by the evidence. His home address and phone number had not changed, and were readily available through the Friend of the Court. Father testified that he did not block respondent from calling him. He additionally explained that respondent understood that she could re-establish a relationship with IWR by going through "proper channels," meaning by either contacting father directly or by filing a motion with the trial court. The record shows that respondent made little effort to contact father. She testified that she "periodically" attempted to contact him via texting, but was unable to recall any details of such attempts. Respondent sent one Facebook message each to the paternal grandmother and great-grandmother, and left "a couple" of letters, a Christmas gift from Santa, and a Valentine's Day card at her parents' home. The trial court reasonably concluded that respondent's few attempts fell short of meaningful efforts to contact or communicate with IWR on a regular basis. Further, respondent's claim that father thwarted her attempts to contact IWR is contradicted by her testimony that she purposefully did not contact IWR because of her drug addiction. For these reasons, the trial court did not clearly err in finding that father appropriately exercised his authority as the custodial parent to protect IWR from respondent's coming "in and out" of the child's life because of her severe drug addiction.

Because we conclude that the trial court did not clearly err in finding that petitioner had established both prongs of MCL 710.51(6) by clear and convincing evidence, we affirm.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola