*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LHH, Minor.

UNPUBLISHED
November 30, 2023

No. 365553
Shiawassee Circuit Court
Family Division
LC No. 22-004038-AY

*In re* HCH, Minor.

No. 365554
Shiawassee Circuit Court
Family Division
LC No. 22-004039-AY

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father appeals as of right the trial court order terminating his parental rights to his two children under MCL 710.51(6) of the Michigan Adoption Code, MCL 710.21 *et seq*. We reverse and remand.

## I. BACKGROUND

This case originates from a stepparent adoption involving an incarcerated noncustodial parent. Petitioner-mother met respondent-father when she was 15 years old and he was 18. Though the date is unclear from the record, the two married at some point. The couple had two children together, LHH and HCH, who were born in 2014 and 2016, respectively. In 2017, respondent-father pleaded guilty to third-degree criminal sexual conduct, MCL 750.520d(1)(a), and accosting a child for immoral purposes, MCL 750.145a, after sexually assaulting petitioner-

---

[1] *In re LHH*, unpublished order of the Court of Appeals, entered April 17, 2023 (Docket No. 365553); *In re HCH*, unpublished order of the Court of Appeals, entered April 17, 2023 (Docket No. 365554).

mother's minor sister. See *People v Hargrove*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2019 (Docket No. 344352) (affirming sentences). Petitioner-mother's sister was around 13 to 14 years old when respondent-father started sexually abusing her. See *id*. The abuse included at least 20 instances of sexual penetration (by respondent-father's estimation at his sentencing hearing), or as many as 50 instances (according to the victim's claims). See *id*. Respondent-father's earliest release date is in late October 2027.

Respondent-father and petitioner-mother maintained contact for a few years after his imprisonment. Petitioner-mother visited respondent-father in prison once or twice a month in 2018 and 2019, and they communicated by telephone and "JPay," a fee-based service available to prisoners that is similar to e-mail. Petitioner-mother indicated that she started therapy in 2018, which led to less visits with respondent-father. According to respondent-father, the last time petitioner-mother visited him was in late January 2020. In October 2021, petitioner-mother divorced respondent-father. The judgment of divorce awarded petitioner-mother sole legal and physical custody of the couple's children. Petitioner-mother then married petitioner-stepfather in mid-November 2021, after approximately a year of dating.

In early June 2022, petitioner-mother and petitioner-stepfather petitioned the court for a stepparent adoption to allow petitioner-stepfather to adopt LHH and HCH. Petitioner-mother petitioned the court to terminate respondent-father's parental rights to HCH and LHH on June 9, 2022, and July 6, 2022, respectively. In mid-July 2022, the trial court signed the petitions for stepparent adoption, authorizing an investigation of the proposed adoptions.

In late February 2023, the trial court held a trial on petitioner-mother's petition to terminate respondent-father's parental rights. Petitioner-mother and respondent-father testified at trial. Respondent-father testified that although he had not seen HCH since he went to prison in 2017, petitioner-mother last took LHH to visit respondent-father in early 2020.[2] Petitioner-mother did not take HCH to visit respondent-father because he was not allowed to visit with "any female under" 18 years old. Respondent-father admitted that he had not sent any mail to petitioner-mother since 2021, though he claimed to not have her then-current address. He also testified that he sent two letters to petitioner-mother's grandparents' house in late 2020 or early 2021, but never received a response. He could not recall the children's mailing address, and he lost a piece of paper with the address on it at some point during the COVID-19 pandemic. Petitioner-mother testified that the proper address to reach the children was her grandmother's house, which was respondent-father's own current mailing address and the address on his driver's license. Respondent-father testified that until 2019, petitioner-mother allowed him to talk on the telephone with the children on some Sundays. He testified, however, that since July 2020 he had "tried to call without answer."

Respondent-father never provided any financial support for the children. The court did not order him to pay support during his incarceration. Rather, in the judgment of divorce, uniform child support order, and child support deviation addendum, the trial court set his support at "$0.00"

---

[2] Petitioner-mother disputes this date. She testified that she last took LHH to the prison in 2019 before the COVID-19 pandemic.

and directed respondent-father to contact the friend of the court following his release from prison. Respondent-father testified that, regardless, he could not send money for the care or support of his children because he was "legally not allowed to . . . ."[3] Though he took opportunities to earn money while incarcerated, respondent-father could not earn more than $15 per month. He testified that he typically used $10 for phone calls and $5 for JPay "stamps." He estimated that he had earned less than $200 since his incarceration and never kept more than $50 in his prison account.

After the testimony at the termination hearing, the trial court ruled from the bench. The court noted that the question was whether respondent-father paid "any form of reasonable support having had the ability to do so[.]" It observed that respondent-father "didn't have the ability to pay what would have been owed under the guidelines," and that, regardless, he was uncollectible while incarcerated. The trial court noted, however, that respondent-father was "one of the higher earners" it had "gotten testimony from at [$15] a month." It also opined that "two of the things to be a parent is consistency and sacrifice." The trial court found "neither one of th[o]se here," noting that under the relevant statute, "you have to pay substantial support based on the ability to do so," meaning "paying support based on the . . . greatest income you can receive which now is approximately [$15] a month." The court suggested this "mean[t] sacrifice"—fewer phone calls and "JPays" so he could send a dollar a week to his children. It therefore found that respondent-father had "the ability to pay some support," despite recognizing that respondent-father's payments would "have been a very small flow of money that [would not] change their lifestyle but demonstrated [his] commitment." The trial court also rejected respondent-father's claim that he did not know his own address. It further found there was no substantial contact between respondent-father and his children after January 2020, and that he made no "great effort to maintain . . . contact with [his] kids."

In concluding its findings, the trial court found "by clear and convincing evidence that [respondent-father] had the ability to provide consistent support though not ample support" and that he "had the ability to maintain some type of contact with the kids." It therefore terminated respondent-father's parental rights to LHH and HCH. This appeal followed.

II. STANDARD OF REVIEW

"The petitioners in a stepparent adoption proceeding have the burden of proving by clear and convincing evidence that termination of the noncustodial parent's rights is warranted." *In re NRC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362915); slip op at 2. Evidence is clear and convincing when it leads the trier of fact to "a firm belief or conviction as to the truth

---

[3] This appears to have been a reference to advice respondent-father claimed to have received from a prison counselor regarding restrictions on inmates' ability to use money from prison trust accounts. To our knowledge, "[t]ransfer to family members and to a parent or verified legal guardian of the prisoner's child" is a permitted purpose on which prisoners are allowed to spend funds. See Michigan Department of Corrections, *Policy Directive 04.02.105, Prisoner Funds*, (effective date January 1, 2010), pp 6-7 available at <https://www.michigan.gov/corrections/-/media/Project/Websites/corrections/Files/Policy-Directives/PDs-04-Institutional-Operations/PD-0402-Fiscal-Control/04-02-105-Prisoner-Funds-effective-01-01-10.pdf?rev=ab9d87b593874bfc93023d4866a03cdf> (accessed October 5, 2023).

of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). This Court reviews the trial court's factual findings in a stepparent adoption proceeding for clear error. *In re NRC*, ___ Mich App at ___; slip op at 2. "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at ___; slip op at 2. We defer "to the trial court's special opportunity to evaluate the credibility of witnesses who appear before it." *In re BWJ*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363607); slip op at 2. "Any related statutory interpretation poses a question of law reviewed de novo . . . ." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016).

## III.  FAILURE TO SUPPORT

Respondent-father argues that the trial court erred by finding that the conditions of MCL 710.51(6)(a) were satisfied because he did not have the ability to pay "substantial" support. We agree.

"MCL 710.51(6) governs the termination of a noncustodial parent's rights in a stepparent adoption proceeding." *In re NRC*, ___ Mich App at ___; slip op at 3. "The purpose of MCL 710.51(6) is to foster stepparent adoptions in families where the natural parent had regularly and substantially failed to support or communicate and visit with the child and refuses to consent to the adoption." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). MCL 710.51(6) provides:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
>
> (a)  The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.
>
> (b)  The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

"Accordingly, a court may only terminate parental rights under the stepparent adoption statute after concluding that both Subdivision (a) and (b) are satisfied, and also that the conditions provided in the preceding paragraph are satisfied." *In re AJR*, 496 Mich 346, 353-354; 852 NW2d 760 (2014). To the extent our inquiry focuses on subsection 6(a), this Court has explained that

this subsection addresses two separate situations: "(1) where a parent, when able to do so, fails or neglects to provide regular and substantial support, and (2) where a support order has been issued and the parent fails to substantially comply with it." *In re SMNE*, 264 Mich App 49, 53; 689 NW2d 235 (2004) (citing and reaffirming the principles in *In re Colon*, 144 Mich App 805, 809-810; 377 NW2d 321 (1985)).

At the outset, we acknowledge that the child support order did not require respondent to make payments during his incarceration. It set support at "$0.00." On the surface, it appears that respondent-father complied with the support order. But MCL 710.51(6)(a) provides, "A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered." When, as here, there is no support order in effect (or the order sets support at $0.00), MCL 710.51(6)(a) required petitioners to prove that respondent-father "had the ability to pay regular and substantial support but had neglected to do so for two or more years." *In re SMNE*, 264 Mich App at 56-57. Respondent-father therefore must have had the ability to provide both regular *and* substantial support. He does not challenge the trial court's finding that he could have paid regular support, but instead focuses on whether he could provide *substantial* support.

The trial court already concluded that respondent-father could not provide substantial support. It determined that respondent-father could have provided a dollar a week, or $3 to $4 per month, to his children. But the trial court explicitly recognized that this amount would not make a meaningful difference in the children's lives. It would only demonstrate respondent-father's commitment. Regardless, in concluding its findings, the trial court found "by clear and convincing evidence that [respondent-father] had the ability to provide consistent support though not ample support." This finding is at odds with *In re SMNE*, 264 Mich App at 56-57 and MCL 710.51(6)(a), which required petitioners to establish that respondent-father had the ability to provide regular and substantial support. The trial court believed that the standard was whether he paid "any form of reasonable support having had the ability to do so[.]" This is not the standard. See *In re SMNE*, 264 Mich App at 56-57 (requiring proof of regular and substantial support, not any form of reasonable support). Accepting without concluding that respondent-father was able to send $4 out of the $15 he made per month in prison, one dollar per week or $3 to $4 a month is not "substantial" support. The trial court recognized this when it found that the amount respondent-father could have provided was "not ample support." See *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 187-188; 931 NW2d 539 (2019) (citing a United States Supreme Court opinion referencing nominal damages of $1); *Franzel v Kerr Mfg Co*, 234 Mich App 600, 619; 600 NW2d 66 (1999) (recognizing that nominal damages are "usually one dollar"); *Cicotte v Gagnier*, 2 Mich 381, 383 (1852) (noting agreement between parties included consideration of "the nominal sum of one dollar"). The trial court incorrectly focused its inquiry on the father's sacrificial or symbolic support, as opposed to the substantive impact on the children.

The trial court clearly erred by finding that petitioners satisfied the conditions set forth in MCL 710.51(6)(a). Because $1 a week, or $4 a month, is not a "substantial" amount of money, respondent-father did not have "the ability to pay regular and substantial support." *In re SMNE*, 264 Mich App at 56-57. This conclusion should not be viewed as creating a carveout for any incarcerated respondent. Many incarcerated respondents still have available means of providing support beyond their income from prison labor, including family support, savings, and other assets and income. This respondent's sole avenue for providing support was his prison income. The trial

court determined that this would not make a meaningful difference in the children's lives. The trial court therefore could not terminate respondent-father's parental rights under MCL 710.51(6). Because of our resolution of this issue, we need not consider respondent-father's other arguments.

We reverse and remand. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado